CHARLES THEO TURNER and MILLER MOTOR EXPRESS, INC., a Corporation of the State of North Carolina, Defendants Below, Plaintiffs in Error, v. HOWARD G. VINEYARD, Plaintiff Below, Defendant in Error.

(*April* 18, 1951.)

RICHARDS, C. J., TERRY and CAREY, J. J., SEITZ, Vice-Chancellor, and HERRMANN, sitting.

*William H. Bennethum* and *Morton E. Evans* (of Morford, Bennethum, Marvel and Cooch) for Defendants Below, Plaintiffs in Error.

*William Poole* and *Richard F. Corroon* (of Southerland, Berl and Potter) for Plaintiff Below, Defendant in Error.

Supreme Court, No. 2, September Session, 1950.

HERRMANN, J., delivering the opinion of the Court:

Plaintiff brought an action for damages for personal injuries, asserting negligence on the part of the defendants. After a trial before the court, sitting without a jury, the court found for the plaintiff and judgment was entered in his favor for the sum of $8,585.74. The defendant obtained the issuance of a writ of error out of this court.

The basic facts found by the trial court are these: On April 3, 1948, the plaintiff was a passenger in an automobile which was being operated by Kenneth Moore in a southerly direction on the dual highway just north of Smyrna, Delaware. A tractor-trailer, owned by the defendant Miller Motor Express, Inc., was being operated by the defendant Charles Theo Turner in a southerly direction on the highway ahead of the Moore automobile. As the two vehicles approached an intersection in the highway, Moore drove from the right-hand lane into the left-hand lane and began to overtake and pass the tractor-trailer which was then being oper-

ated in the right-hand lane. Moore's automobile was overtaking the tractor-trailer, and was approximately 75 feet behind it, when the tractor-trailer crossed the center line of the highway and entered the left-hand lane, preparatory to making a left turn at the intersection. This movement of the tractor-trailer was made without signal to Moore of intent to change from a direct line of operation. Moore was driving at a speed of about 45 miles per hour. When he saw the tractor-trailer move to the left on the highway, he applied his brakes and swerved into the right-hand lane. At the same moment, Turner saw the Moore car in his rear view mirror and, realizing that he was turning into the path of an overtaking automobile, Turner also swerved back into the right-hand lane. Turner then applied his brakes. The Moore automobile collided with the rear of the tractor-trailer and the plaintiff-passenger was injured.

Upon these facts, the trial court found that the defendants were guilty of negligence which was a proximate cause of the accident. As the basis of this ultimate finding, the trial judge made certain subordinate findings, among which were the following:

1. "The original negligence (of the defendant) in failing to give timely warning of his intention to turn left was a major proximate cause * * *."

2. The defendant's "sudden swing back into the right-hand lane and stop immediately in front of plaintiff's car was a minor contributing cause to the result."

3. The crossing of the center line by the tractor-trailer "justified plaintiff's driver in believing defendant was about to turn left as, indeed, he admitted he was going to do."

4. "Defendant by failing to give a timely signal had placed plaintiff's car in danger by starting to swing in front of him * * *."

5. At the moment when plaintiff's driver applied his brakes and "swung right" the defendant "seeing the danger he had placed

plaintiff in by his intended left-hand turn, swung back to his right also and came to a sudden stop."

6. "* * * plaintiff's driver was going too fast to stop and avoid collision at the moment defendant's truck swung without warning into the left-hand lane, thus forcing plaintiff's driver to swing right in order to avoid collision."

The defendants assign as error that the above-mentioned subordinate findings of the trial court, and its ultimate findings of negligence, are not supported by the evidence. The contention of the defendants is two-fold in nature. First, they find fault with the subordinate conclusions for which, they contend, no direct evidence can be found. The fallacy of this contention is that a finding of fact need not be premised upon direct evidence; it may be based upon inference. Secondly, the defendants urge this court to reconsider all of the evidence and to conclude therefrom that the ultimate finding of negligence is a wrong conclusion, lacking logic and rationale. This would amount to a re-hearing upon the evidence and such is not our function upon writ of error.

The findings of a trial judge, sitting without a jury, have all the force and effect of the verdict of a jury. It is well settled that the verdict of a jury will not be disturbed by this court if there is any competent evidence upon which the verdict could reasonably be based. *Home Ins. Co. v. Wolfman*, 3 *W. W. Harr.* 200, 134 *A.* 50; *Commonwealth Ins. Co. of New York v. Soloman*, 2 *W. W. Harr.* 98, 119 *A.* 850. Similarly, the findings of the court, sitting as the trier of the facts, will not be disturbed if reasonably supported by competent evidence. A finding based upon inference meets this test if there is competent evidence from which the inference may be fairly and reasonably deduced. When there is competent evidence to warrant the material findings of the trial judge, we will not substitute our judgment for his. *Bennett v. Barber*, 7 *Terry* 132, 79 *A.* 2d 363.

Accordingly, in considering the defendant's contentions regarding the findings of the trial judge, ultimate or subordi-

nate, the only question for this court to determine is whether there was any competent evidence from which the trial judge could reasonably make such findings. When determining whether findings of fact have evidentiary support, we consider only the evidence most favorable to the successful party below. Upon the basis of the testimony of the plaintiff, of his fellow-passenger, of the driver of the automobile in which he was riding and of the investigating police officer, we think that there is ample competent evidence in this case to warrant the findings made by the court below. Accordingly, the assignments of error directed to the findings must be dismissed.

 In assessing damages, the trial court included the sum of $557.74 which had been expended by the plaintiff for the hire of a man to perform the work on the plaintiff's farm which the plaintiff himself would have done if he had not been injured in the accident. The defendants assign this as error, contending that such expenditure is not a proper element of damages. They urge that, indirectly, it amounts to proof of loss of profits in the plaintiff's business. We do not agree that proof of such expenditure under the facts and circumstances of this case is equivalent to proof of loss of business profits. We recognize that the value of a plaintiff's services in his business often must be disregarded as an element of damages because conjectural or speculative. This, however, is not such a case. Where, as here, the plaintiff's business and his personal services in its operation are of such nature that another can perform the same services in the plaintiff's stead, the expenditure for such replacement is a proper element of damages. *Ashcraft v. Chapman*, 38 *Conn.* 230; *cf. Wilman v. People's Ry. Co.*, 4 *Penn.* 260, 55 *A.* 332; *Snyder v. People's Ry. Co.*, 4 *Penn.* 145, 53 *A.* 433.

The defendants further contend that the trial court erred in considering this item of damages because the plaintiff failed to prove either the necessity or the reasonableness of the expenditure. The defendants did not object upon that ground at the trial of the case. Such contention, made now for the first time upon

appeal, comes too late and we decline to consider it. *Philadelphia and Reading Railway Company v. Green & Flinn, Incorporated,* 2 *W. W. Harr.* 78, 119 *A.* 840. We conclude, therefore, that the inclusion of this item of damage was not error.

Finally, the defendants would have us set aside, as being grossly excessive, the trial court's assessment of damages in the amount of $2,500 for pain and suffering and $5,000 for permanency of injury.

As to pain and suffering, the trial judge found that the plaintiff was rendered unconscious; that he suffered fracture of the left pubic bone and injuries to the lumbar sacro region, the bladder, and the right eye; that the fourth metacarpal bone of his left hand was fractured; that he experienced pain in the back and neck for a long period of time; that he incurred stiffness of the left shoulder with mild atrophy; that he was confined to the hospital for ten days and to his bed at home for five weeks and that, thereafter, he was obliged to use crutches and a pelvic belt for a period of three weeks.

As to permanency of injury, the court below found that the plaintiff will be permanently deprived of partial use of his left hand and shoulder and that this loss of use will permanently interfere with his occupation as a farmer.

To overthrow an award of damages assessed by the trial judge, the defendants must show that it was so excessive as to be one that the trial court could not reasonably make. *Bennett v. Barber, supra.* The defendants have not made such showing under the evidence in this case.

The judgment of the court below is affirmed.