JACOB LICHTER and JENNIE L. LICHTER, Partners t/a Southern Fireproofing Company, Plaintiffs Below, Appellants, v. BOWATERS SOUTHERN PAPER CORPORATION, Defendant Below, Appellee.

BOWATERS SOUTHERN PAPER CORPORATION, Defendant Below, Appellant, v. JACOB LICHTER and JENNIE L. LICHTER, Partners t/a Southern Fireproofing Company, Plaintiffs Below, Appellees.

*(February* 26, 1959.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*H. James Conaway, Jr.* (of Morford, Young and Conaway) and *Paul W. Steer* (of Steer, Strauss and Adair, of Cincinnati) for appellants and cross-appellees.

*Richard F. Corroon* (of Berl, Potter and Anderson) for appellee and cross-appellant.

Supreme Court of the State of Delaware, Nos. 21 and 30, 1958.

SOUTHERLAND, C. J.:

This case grows out of the construction of a large paper mill at Calhoun, Tennessee.

Plaintiff, Southern Fireproofing Company ("Southern"), was the subcontractor for the masonry work. Defendant, Bowaters Southern Paper Corporation, was the owner. The general contractor was Fraser, Brace & Roane-Anderson ("Fabroan"). Fabroan acted, however, as Bowaters' agent in the matter. Southern's contract for the masonry work was executed by Fabroan as Bowaters' agent. J. E. Sirrine Company ("Sirrine") was the architect and engineer.

Southern's contract with Fabroan was signed on March 13, 1953. It incorporated by reference the general contract and the plans, specifications and conditions under which the work was to be performed.

There was a delay on the completion of the masonry work— fifteen weeks, as found by the trial judge. Southern says it was twenty-one weeks, but the point is immaterial here.

After the completion of the work, Southern and Bowaters were unable to agree on the amount due Southern. Southern brought suit in the court below, claiming damages for numerous alleged breaches of contract by Bowaters and for extras. Bowaters denied any liability, and counterclaimed for damages for alleged breaches of contract by Southern, including delay.

The case was tried by the court without a jury on oral testimony and documentary evidence. The court filed an opinion con-

taining a series of findings of fact. The larger part of Southern's claim was rejected, but with respect to certain items it was allowed, with interest. Both parties appeal.

Many of the issues resolved by the court's opinion are not raised here. Southern's appeal presents four questions and Bowaters' cross-appeal two others.

### Southern's Appeal

1. The principal item of damages asserted by Southern is a claim for $95,447.15 based upon unwarranted delays and interferences with the performance of the work alleged to have been caused by Bowaters or Sirrine.

The trial court found that Southern had failed to prove its case, and rejected the claim. Southern in its brief asserts that there is ample evidence to justify a finding in its favor, and that there is no evidence to the contrary.

A reading of the testimony and documents supplied in the appendix to Bowaters' brief shows beyond any doubt that the evidence offered by Bowaters tended to show that the delay in the completion of the masonry work was the fault of Southern itself. Plainly, the issue of delay was a question of fact. The trial judge found it against Southern; there was competent evidence to sustain his finding; and it will not be disturbed here. *Turner v. Vineyard,* 46 *Del.* 138, 80 *A.* 2d 177; *Mulco Products, Inc. v. Black,* 50 *Del.* 246, 127 *A.* 2d 851.

Southern does not seem to question this rule; its contention on the point, as we understood it from the oral argument, is this:

During the course of the trial Bowaters withdrew that part of its counterclaim alleging damages by reason of delays caused by Southern; such withdrawal, Southern argues, had the effect of removing from the court's consideration the evidence offered by Bowaters in support of its counterclaims for Southern's delay. Therefore, says Southern, the only evidence on the issue of delay was the evidence offered by Southern.

The fallacy of this contention is obvious. Bowaters' evidence was offered not only in support of its counterclaim but also in support of its answer, which expressly alleged that the delay in the completion of the masonry work was solely Southern's fault. The judge had all the evidence before him, and resolved the conflict against Southern. That is the end of the matter.

A special point is made about the question of "access openings" as a cause of delay caused by Bowaters. Access openings are openings required to be left in the exterior walls for the admission of heavy machinery, so that such machinery may not have to be disassembled outside of the walls and reassembled inside. The cost of such openings the trial court found to be an extra. Southern argues that this was a finding of unnecessary delay caused by Bowaters which the court should have found to be a compelling illustration of Bowaters' delay and from which the court should have inferred that all delays were the fault of Bowaters.

The conclusion does not follow. The court found in Southern's favor that the access openings were not covered by the plans and specifications, but obviously also found that Southern's claim for delay on that account was not proved.

2. The second question raised by Southern on the briefs concerns the legal consequences of delay under the terms of the contract if it be assumed that such delay was caused by Fabroan. How this can be an issue here we do not understand. Southern admits it made no contention below that Fabroan caused the delay. Therefore Southern cannot raise the point here. *Stephenson v. Commonwealth & Southern Corporation*, 19 *Del. Ch.* 447, 168 *A.* 211.

It is quite true that the trial court did consider this question. Bowaters expressly pleaded as a defense to the charge of delay an article of the contract providing that if Southern should be delayed in the prosecution of the work by act or neglect of Fabroan, the time for performance by Southern would on request be extended, and that such extension would dis-

charge Fabroan from any liability by reason of the delay. The court below considered the validity of this provision and sustained it, although it was not strictly necessary for it to do so, because, as above stated, the issue of Fabroan's responsibility for delay was not in the case.

Certainly that issue is not before us, and the validity of the contract provision referred to is therefore not before us.

3. The third question here concerns a claim of Southern for $6402.18 overhead and profit on premium overtime wages paid by Southern to its workmen.

The contract provides as follows:

"Fabroan, if it deems necessary, may direct the Subcontractor to work overtime and if so instructed the Subcontractor will work said overtime and, provided that the Subcontractor is not in default in any of the provisions herein, Fabroan will pay the Subcontractor for the actual additional wages paid at rates which have been approved by Fabroan, plus taxes imposed by law on such additional wages, plus compensation and liability insurance on said additional wages when required by law to be paid by the Sub-contractor."

Bowaters paid Southern in accordance with the contract, but refused to pay overhead or profit. Southern argues that the contractual provision above quoted cannot be availed of by Bowaters (1) because the contract contemplated a normal workweek of forty hours, and in this case, because of Bowaters' delays, overtime became "the rule of the job"; and (2) because conversations between representatives of Southern and Bowaters prior to the execution of the contract indicated that overtime would be negligible.

As to the first reason, it appears to be based largely on the contention, rejected by the trial judge, that Bowaters caused the delay. The "normal work-week" provision relied on is taken from the Bowaters-Fabroan contract. It provides:

"The normal working schedule contemplated is a 40-hour work-week, but the Contractor with the approval of the Resident Engineer may exceed this work schedule and pay premium overtime when this seems necessary or desirable."

We find nothing in the above quoted provision that weakens the force of the first-quoted provision in the Fabroan-Southern contract. That provision, in our opinion, governs the rights of the parties in respect of payment for overtime work. Overhead and profit are not included. The court below so held, and we agree.

As for the second reason—the alleged oral conversations preceding the execution of the contract—it appears that the testimony was in conflict and that the court rejected Southern's version of these conversations. The court said:

"The plaintiffs have failed to prove, by the necessary preponderance of the evidence, that there was a representation by Fabroan or agreement between the parties, expressed or implied, whereby the amount of overtime work to be performed by the plaintiff was limited or whereby the defendant undertook to pay to the plaintiffs overhead and profit on overtime wages."

Again, that finding will not be disturbed here.

Southern's third point is without merit.

4. Southern's last point relates to a claim for $1058.30 for overhead and profit on the difference between the tile specified and the tile actually used. The applicable provision of the contract is found in Addendum "C". It reads:

"In the event Off-Grade Structural Glazed Facing Tile, as manufactured by Mapleton Clay Products Company, Canton, Ohio, is authorized for certain portions of the work, price adjustment of Item 4 of the Bid or Proposal will be made on the basis of material prices quoted in Paragraph 5, Item 4" etc.

Some of the Mapleton tile was used. Bowaters paid Southern the difference in price but refused to pay overhead or profit.

The above quoted provision contains no clause requiring payment of overhead or profit in addition to the increased cost. Southern points to a subsequent provision of Addendum "C", reading as follows:

"Any change in completed work done on basis of work order issued by contractor at direction of Engineer will be performed by Sub-contractor and charged on the basis of actual Labor and Material Cost plus Insurance and Social Security Taxes and 6½% of direct labor cost for tools and equipment, except in special cases adjustment of this item to be mutually satisfactory, plus 10% overhead and 10% profit."

In our opinion this clause does not touch the matter, since it deals specifically with changes in "completed work". Moreover, it emphasizes the distinction here applicable; in case of change in completed work, overhead and profit are recoverable; in case of substituted tile, only the additional cost is recoverable. *Cf. United States for Use and Benefit of Lichter v. Henke Const. Co.*, 8 *Cir.*, 157 *F.* 2d 13.

The trial court so ruled, and we agree.

Southern's assertion that change in the material was a change in "completed work" we cannot follow.

A good deal of the argument in Southern's brief is devoted to an attempt to show that upon substitution of materials a contractor incurs expense additional to the difference in cost. Even if this be so, the fact is immaterial. The contract provisions govern.

We find no merit in Southern's appeal.

Bowaters' Appeal

Bowaters' appeal raises two questions respecting the allowance of interest by the trial court.

1. After the filing of the suit Bowaters paid to Southern, on account of Southern's total claim, the sum of $157,417.05. The

court below held that the delay in making this payment was unwarranted and allowed interest on that sum.

The parties agree that the allowance of interest is governed by Tennessee law. *Stentor Electric Mfg. Co. v. Klaxon Co.*, 3 *Cir.*, 125 *F.* 2d 820, involving a case tried in the District Court of Delaware, 30 *F. Supp.* 425. Bowaters concedes that under Tennessee law the payment represented a liquidated amount, but urges that because of certain of the contract provisions interest is not recoverable.

Article IV of the contract contains the following provisions:

"The final payment shall be made within forty days after the completion of the Work covered by this Contract and acceptance thereof by Fabroan and the Engineer, provided all plans and specifications have been returned to Fabroan by the Subcontractor and also provided the Subcontractor has given to Fabroan satisfactory evidence that the premises are free from all liens or other claims chargeable to the premises or the said Subcontractor."

＊　＊　＊　＊　＊　＊

"Prior to final payment, the Subcontractor shall execute and deliver to Fabroan, a General Release in a form satisfactory to Fabroan, holding Fabroan and the Owner free and harmless from all claims arising out of, or in connection with, this contract."

Southern refused to give the release or return the plans and specifications, because it elected to sue.

On their face these provisions fix the time when final payment becomes due, and consequently, if read literally, would appear to prevent any suit by the sub-contractor to recover an amount in dispute, since if he gives the release he abandons his claim, and if he refuses the release he cannot sue on the claim because it is not due. Of course, Bowaters makes no such unreasonable contention; it concedes that suit may be brought,

but argues that interest is not recoverable on the disputed amount, although it was admittedly liquidated and due.

This argument we cannot follow. The quoted provisions have nothing to do with interest. Reasonably construed they simply mean that after the amount due has been agreed upon, the plans shall be returned and a release given as a condition of payment, in order that the final payment may clearly constitute an accord and satisfaction.

Bowaters' construction of the contract is that, in effect—

"Article IV merely provides that if there is any dispute as to the amount due final payment will not be made until the amount has been settled by the parties or determined by a court of competent jurisdiction."

This is to say that the clauses relied on are merely declaratory of the legal rights of the parties to have the courts settle their dispute.

But how does it follow that interest may not be recovered on an amount now admitted to have been due and therefore unjustifiably withheld? What bearing has such a provision on the right to recover interest in a case such as this?

Bowaters says that since Southern did not furnish the release it should not be heard to complain that Bowaters did not pay them the sum admittedly due within the forty-day period. This is to say that an owner who unjustifiably refuses payment of the balance due may have the use of the money until compelled to pay and escape interest as damages for the delay.

We can see no justice in such a result.

The cases cited by Bowaters do not, in our opinion, touch the point. *Capitol City Lumber Co. v. Sudarsky*, 95 *Conn.* 336, 111 *A.* 349, concerns partial payments retained by the owner under a building contract expressly permitting such retention if there were evidence of any liens for which the owner might be liable. Since such retention was specifically authorized, interest

on such withheld payments was held not recoverable. The provision here, in our opinion, is not intended to authorize the owner to withhold a final payment justly due under the contract.

The other cases cited by Bowaters concern the binding effect of a release actually executed by the contractor. They hold that the contractor's surety may not, in the face of such a release, sue the owner to recover money paid on claims of subcontractors. They are not in point here, except, indeed, as illustrating the real purpose which the release provision of the contract is intended to accomplish.

We are of opinion that the trial judge properly allowed interest on the delayed payment of $157,417.05.

2. Bowaters objects to the award of interest on four small claims of Southern allowed by the trial court. These items concerned the cost of access openings, of tending salamanders, for buff brick, and for caulking.

Under Tennessee law interest is recoverable of right only on "bonds, notes, bills of exchange, and liquidated and settled accounts, signed by the debtor". Sec. 47-1607, Tennessee Code Annotated.

Damages for breach of contract do not fall within the statute. *Tennessee Fertilizer Co. v. International Agricultural Corporation,* 1922, 146 *Tenn.* 451, 243 *S. W.* 81, 88; *Illinois Central R. Co. v. Southern Seating & Cabinet Co.,* 104 *Tenn.* 568, 58 *S. W.* 303, 306, 50 *L. R. A.* 729. In the Fertilizer case the applicable rule is thus stated by the Supreme Court of Tennessee [146 *Tenn.* 451, 243 *S. W.* 88]:

"Interest as a matter of right is purely statutory, unknown to the common law (*Cherry's Ex'rs. v. Mann,* [3] *Cooke* [268] 269-272, [3 *Tenn.* 268] 5 *Am. Dec.* 696), and its positive allowance must be confined to those obligations and demands specified and enumerated in statutory provisions. In cases not so included, it remains, as at common law, a matter of discretion in the jury

or chancellor, to be allowed or not, according to the facts presented."

■ Bowaters argues that discretionary interest is allowable only by a chancellor—not by the law courts. Since what we would call a suit at law is triable in Tennessee before a chancellor the distinction seems one without a difference. Bowaters cites *Cole v. Sands*, 1805, 1 *Tenn.* 106. That decision indicates that in a suit at law interest should not be ordinarily allowed when the debt or duty is uncertain. But the later Tennessee cases appear to recognize clearly that interest is recoverable on unliquidated claims in the discretion of the trier of facts whether chancellor or jury. See the *Fertilizer* case, *supra*.

■ We have examined many of the Tennessee cases dealing with the award of interest. No case is cited to us in which the discretionary award of interest on an unliquidated claim has been reversed by the Supreme Court as an abuse of discretion. In the *Illinois Central* case, cited above, the trial court had peremptorily directed the allowance of interest. In *State v. Stockton*, 1954, 38 *Tenn. App.* 90, 270 *S. W.* 2d 586, an award of interest on an unliquidated claim was sustained.

In the instant case the trial judge was in a much better position than is this Court to determine whether the circumstances surrounding the disputed claims of Bowaters and Southern justified the award of interest. He found that interest should be allowed, and we decline to disturb his finding.

We find no error in the record, and the judgment of the Superior Court is affirmed.