# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KARI-ANN JONES, | : | |
| | : | |
| Appellant, | : | K17A-08-002 JJC |
| | : | In and for Kent County |
| v. | : | |
| | : | |
| UNIVERSAL HEALTH SERVICES, INC., | : | |
| | : | |
| | : | |
| Appellee. | : | |

## ORDER

Submitted: July 2, 2018
Decided:  August 16, 2018

*Upon Consideration of Appellant's Appeal from the Industrial Accident Board*
**AFFIRMED**

**AND NOW TO WIT**, this 16th day of August, 2018, upon consideration of the record and the briefing by the parties, **IT APPEARS THAT**:

1.       Before the Court is the appeal of Appellant Kari-Ann Jones (hereinafter "Ms. Jones") from the decision of the Industrial Accident Board (hereinafter "the Board" or "the IAB") denying her petition to determine additional compensation due. Ms. Jones suffered a compensable work injury on April 6, 2014 while working for Universal Health Services, Inc. (hereinafter "Employer").  She was employed as a mental health technician who conducted group sessions with adolescents and helped them with their daily activities.  On the date of the injury, Ms. Jones attempted to stop an altercation between two young men and suffered injuries after being pushed into a wall.

2. Ms. Jones reported the injury and went to the Kent General emergency room and complained of shooting pain in the back of her right hand and arm. Several days later, Ms. Jones saw Dr. Eichenbaum, a hand doctor, who put her hand in a cast. Ms. Jones alleges that she told Dr. Eichenbaum that she had pain radiating all the way up her arm, but felt that the doctor did not listen to her. In July of that year, Ms. Jones saw Dr. Richard DuShuttle, who ordered an MRI of her wrist. Ms. Jones then saw Dr. Randeep Kahlon who also concentrated solely on her wrist, and gave her two injections for nerve pain. Next, Ms. Jones was seen by Dr. Lee Osterman, a hand surgeon, who performed surgery in November 2014 to address a triangular fibrocartilage complex tear. Dr. Osterman thereafter documented shooting arm pain on March 30, 2015, and sent her for an MRI of her neck. Ms. Jones then saw Dr. Irene Mavrakakis in November 2015. Dr. Mavrakakis documented arm and neck pain and administered physical therapy focused primarily on her neck.

3. The April 2015 MRI of Ms. Jones's neck revealed large, acute disc herniations and a disc bulge. Dr. Zaslavsky, an orthopedic spine surgeon, recommended surgery. The surgery performed on December 18, 2015 included a cervical discectomy and a fusion. In May 2016, she complained that both her neck and arm pain had returned, and a June 2016 MRI revealed that a cadaver bone used in her surgery had deteriorated. Dr. Zaslavsky performed a second neck surgery on December 27, 2016 to re-stabilize Ms. Jones's neck. She since has received post-surgical physical therapy and massage therapy.

4. Ms. Jones suffered a compensable right hand and wrist injury. On September 21, 2016, she filed a petition to determine additional compensation due, alleging that her neck condition was causally related to the work incident. Specifically, she alleges that the two spinal surgeries performed in 2015 and 2016 and the follow-up care are compensable as reasonable and necessary medical treatment causally

related to the April 2014 incident. In response, the employer disputes that the neck treatments are casually related to the work incident.

5. The Industrial Accident Board conducted a hearing in this case on April 19, 2017. The sole issue before the Board was whether Ms. Jones's spinal surgeries were causally related to her April 2014 work injuries. The Board considered, *inter alia*, testimony from Ms. Jones, testimony from Dr. Zaslavsky, who performed the spinal surgery, and testimony from Dr. Errol Ger, an orthopedic surgeon testifying on behalf of the Employer.

6. Dr. Zaslavsky testified that the medical treatment Ms. Jones received for spinal injuries was reasonable, necessary and causally related to her 2014 work incident. Dr. Zaslavsky testified that some neck problems include symptoms such as numbness and tingling in the hand, and that the symptoms slowly advance to pain in the elbow and shoulder. Furthermore, Dr. Zaslavsky testified that spinal cervical injuries are difficult to diagnose because disc problems do not always cause neck complaints.

7. Dr. Ger testified that he examined Ms. Jones and reviewed her medical records. He noted no recorded complaints by Ms. Jones referring to her cervical spine until March 2015, eleven months after Ms. Jones's April 2014 work injuries. He also testified that his record review revealed that another doctor performed an examination of her neck in the interim and also had found nothing wrong. Dr. Ger agreed that the treatment for her neck injuries was reasonable and necessary. He testified, however, that it was not related to the April 2014 work incident.

8. The Board concluded that the evidence in the case clearly established that she had no neck-related complaints in 2014. In deciding so, the Board considered Ms. Jones's testimony that she complained about neck pain in 2014, but that her doctors did not listen to her or document these complaints. Nevertheless, the Board found this testimony unpersuasive. On the other hand, the Board found Dr. Ger's testimony

3

persuasive, including his testimony that the acute disc herniation finding in the 2015 MRI suggested that the injury occurred recently.  The Board concluded that the acute disc herniation more than likely developed in 2015 and was unrelated to the 2014 incident.   Accordingly, the Board held that Ms. Jones failed to show by a preponderance of the evidence that her spinal condition was caused by her April 2014 work incident and it denied her claim for additional compensation.

9.     Thereafter, Ms. Jones filed a notice of appeal *pro se* and a written brief. She presents no new legal arguments in her brief, but instead restates the facts and emphasizes that she complained about neck-related symptoms in 2014, but that her doctors did not document the complaints.  Moreover, Ms. Jones claims that the Board's decision includes factual errors and should have considered video evidence of the April 2014 accident.  Finally, she argues that her attorney did not properly present the neck injury portion of her claim.

10.     This Court's appellate review of the IAB's factual findings is limited to determining whether the Board's decision is supported by substantial evidence.[1] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] On appeal, the Court views the facts in the light most favorable to the prevailing party below.[3] Moreover, the Court does not weigh the evidence, determine questions of credibility or make its own factual findings.[4] Absent any errors of law, which are reviewed *de novo,* a decision of the IAB supported by substantial evidence will be upheld unless the Board abused its discretion.[5] The Board

---

[1] *Bullock v. K–Mart Corp.*, 1995 WL 339025, at *2 (Del. Super. May 5, 1995) (*citing General Motors v. Freeman*, 164 A.2d 686, 688 (Del.1960)).

[2] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981) (*quoting Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).

[3] *Chudnofsky v. Edwards*, 208 A.2d 516, 518 (Del. 1965) (citing *Turner v. Vineyard*, 80 A.2d 177, 179 (Del. 1951)).

[4] *Bullock, 1995 WL 339025*, at *2 (*citing Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965)).

[5] *Hoffecker v. Lexus of Wilmington*, 2012 WL 341714, at *2 (Del. Feb. 1, 2012) (*citing Person–Gaines v. Pepco Holdings, Inc.,* 981 A.2d 1159, 1161 (Del. 2009)).

abuses its discretion when its decision exceeds the bounds of reason in view of the circumstances.[6]

11.    Here, the Court finds no error of law in the Board's decision.  The Board found that, more likely than not, Ms. Jones neck complaints and treatments were *not* related to the work incident.  It therefore follows that Ms. Jones did not meet her burden of proof in this matter.  Furthermore, after a review of the record, the Court finds substantial evidence on the record to support the Board's finding that Ms. Jones's spinal surgeries were not causally related to the April 2014 incident.  The Board carefully considered the testimony of Ms. Jones, Dr. Zaslavsky, and Dr. Ger.  Although Dr. Zaslavsky testified that Ms. Jones's spinal injuries were a result of the April 2014 accident, the Board found his opinions to be conclusory.  In contrast, it found Dr. Ger's testimony that an acute herniation could not be the result of an injury sustained eleven months prior to be more persuasive.  Ms. Jones's challenges to the Board's factual findings include alleging mistakes in the timeline and its failure to consider video evidence that was not before the Board.  None justify reversing the Board's decision.  Even if the Court accepted Ms. Jones's arguments and newly recited facts as true, the Board found Dr. Ger's testimony to be more credible.[7]  Based upon that finding and the substantial evidence of record corroborating Dr. Ger's opinion, the Court must deny Ms. Jones's appeal.

**NOW THEREFORE**, for the reasons cited, the Board's decision in this matter is **AFFIRMED**.

**IT IS SO ORDERED**.

/s/Jeffrey J Clark
Judge

---

[6] *Id.*
[7] *Glanden v. Land Prep, Inc.,* 918 A.2d 1098, 1102 (Del. 2007) (recognizing that it is within the IAB's purview to weigh the credibility of conflicting medical expert opinions).