# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

GENESIS HEALTHCARE      :
SERVICES,      :
     :
        Appellant,      :        K20A-04-003 JJC
     :
        v.      :
     :
OTASIA CEPHAS,      :
     :
        Appellee.      :

## ORDER

Submitted: January 21, 2021
Decided: March 12, 2021

### *Upon Consideration of an Appeal from the Industrial Accident Board*
**REMANDED**

**AND NOW TO WIT,** this 12th day of March 2021, upon consideration of the record and the briefing by the parties, **IT APPEARS THAT**:

1. Appellant Genesis Healthcare Services (hereinafter "Genesis") appeals a decision that the Industrial Accident Board (hereinafter "Board" or "IAB") issued on March 11, 2020. In the IAB's decision, it granted Appellee Otasia Cephas' petition to determine additional compensation due. The Board then ordered Genesis to pay for lower back treatment that Dr. Scott Roberts provided to Ms. Cephas.

2. As background, Ms. Cephas worked for Genesis as a certified nursing assistant. On February 16, 2008, she suffered a compensable work injury to her lower back. When she assisted a patient to her room, the patient fell and caused Ms. Cephas to fall with her and injure her back. Thereafter, she received conservative

treatment from the time of the injury until she underwent a lower back surgery in January 2016. There was no dispute that the work accident necessitated her low back treatment from 2008 through the 2016 surgery.

3. Ms. Cephas's initial treatment with Dr. Roberts spanned from 2013 through her 2016 surgery. After that surgery, she resumed treatment with Dr. Roberts when either new back pain emerged *or* her previous pain reemerged (hereinafter, the disputed condition referenced as "post-2016 back pain"). The post-2016 back pain came from a congenital condition that preexisted her work injury. Moreover, that congenital condition existed at a level in her spine below the lowest level addressed by her 2016 surgery.

4. Important to this appeal, Genesis nevertheless paid some of Dr. Roberts' post-2016 bills. It also paid the facility and medication charges that accompanied some of Dr. Roberts' post-2016 treatment. Genesis stopped paying the disputed bills, in large part, after August 3, 2018. Her unpaid bills generate the current dispute.

5. In the IAB's decision, it focused on whether the post-2016 back treatment was related to the work accident. It correctly recognized that the work injury could have also been a cause of Ms. Cephas' treatment notwithstanding an undisputedly concurrent congenital cause. The following record evidence, viewed in the light most favorable to Ms. Cephas, addressed whether the work injury constituted a "but for" cause of the disputed treatment: (1) Dr. Roberts testified that he treated Ms. Cephas for back pain before and after the 2016 surgery; (2) but, Dr. Roberts could not opine whether his post-2016 treatment was related to the work injury; (3) Ms. Cephas testified that she could perform certified nursing assistant duties prior to her 2008 injury, but could not perform them afterward because of her back pain; and (4) Genesis' carrier paid a significant number of bills for her post-2016 treatment, but declined to pay others.

6. In its Order, the IAB referred to the correct standard: that is, but for the 2008 injury, would the disputed post-2016 treatment have been necessary?[1] It then found the treatment to be related for one principal reason: the carrier paid many of Dr. Roberts' post-2016 bills and other post-2016 bills.[2] The Board found those payments to demonstrate Genesis' acceptance of responsibility for her treatment.[3]

7. Genesis now appeals the IAB's decision. It contends that because Dr. Roberts did not testify that the work injury necessitated Ms. Cephas' treatment, she failed to meet her burden at the hearing. No other expert other than Dr. Roberts testified at the hearing.

8. In response, Ms. Cephas argues that there is substantial evidence in the record to support the Board's finding that she met her burden. She identifies evidence that includes (1) the carrier's payments, (2) and an earlier acknowledgement before the Board that Ms. Cephas suffered a low back injury that required the 2016 low back surgery.

9. This Court's appellate review of the IAB's factual findings is limited to determining whether the Board's decision is supported by substantial evidence and is free from legal error.[4] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[5] On appeal, the Court views the facts in the light most favorable to the prevailing party below.[6] Moreover, the Court does not weigh the evidence, determine questions of credibility

---

[1] *Cephas v. Genesis Healthcare Services,* No. 1316891, at *9 (Del. IAB March 11, 2020) [hereinafter "IAB Order"].

[2] Id. at * 12.

[3] Id.

[4] *Bullock v. K-Mart Corp.*, 1995 WL 339025, at *2 (Del. Super. Ct. May 5, 1995) (citing *General Motors v. Freeman*, 164 A.2d 686, 688 (Del. 1960)).

[5] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).

[6] *Chudnofsky v. Edwards*, 208 A.2d 516, 518 (Del. 1965) (citing *Turner v. Vineyard*, 80 A.2d 177, 179 (Del. 1951)).

or make its own factual findings.[7]  Absent an error of law, which would be reviewed *de novo*, a decision of the IAB supported by substantial evidence will be upheld unless the Board abused its discretion.[8]  The Board abuses its discretion when its decision exceeds the bounds of reason in view of the circumstances.[9]

10.  At the outset, the Board recognized the correct causation standard. Namely,  it applied the "but for" standard articulated in *Reese v. Home Budget Center*.[10]  The central issue in this appeal, however, turns on whether the Board erred by applying an incorrect standard when finding Genesis to have entered an implied agreement to compensate Ms. Cephas.   This potential error of law impacts whether Genesis' payment of some of the post-2016 bills constitutes credible evidence of compensability.  Because Dr. Roberts testified that he could not relate the post-2016 treatment to the work accident, how to treat those payments will impact the Court's substantial evidence review.

11. The IAB explained its finding that Genesis' payment of the bills demonstrated that they were compensable as follows:

> [t]here is not evidence that Employer/carrier's partial payments of Dr. Roberts' treatment was simple inadvertence or was made under a feeling of compulsion. . . . Furthermore, there is no evidence that the payment of Claimant's low back treatment was . . .[a] gift flowing merely from a generosity of spirits by a carrier . . ..   Thus, the board finds that Employer/carrier's payment of Claimant's low back treatment . . .  is indicative of its acceptance of that treatment as compensable. . . . [T]he Board concludes that the evidence supports a finding that Claimant's low back treatment with Dr. Roberts, including any unpaid charges, is compensable.[11]

---

[7] *Bullock*, 1995 WL 339025, at *2 (citing *Johnson v. Chrysler Corp*., 213 A.2d 64, 66 (Del. 1965)).
[8] *Hoffecker v. Lexus of Wilmington*, 2012 WL 341714, at *1 (Del. Feb. 1, 2012) (citation omitted).
[9] *Id.*
[10] *Reese v. Home Budget Center*, 619 A.2d 907, 910 (Del. 1992) (describing the standard for causation in a workers' compensation claim involving a claimant's preexisting injury as asking whether the injury would not have occurred *but for* the accident).
[11] IAB Order at *12 (emphasis added).

The above-mentioned reasoning is unclear. The Court is unable to determine whether it inadvertently omits language, contradicts itself, or demonstrates a misunderstanding of the applicable standard.

12. Delaware mandatory authority provides the standard that the Board must consider when it decides when an employer's payment of bills constitutes an acceptance of responsibility. Examining three Delaware Supreme Court decisions illustrate the law's evolution regarding this issue. Their holdings culminate with the rule that requires this remand.

13. First, in its decision in *Starun v. All Am. Engineering Co.*[12], the Delaware Supreme Court examined a carrier's payment of medical bills in a significantly different context than the one in Ms. Cephas' case. There, the Court held that an *implied* agreement to pay compensation extended the statute of limitations in a compensation claim from two to five years.[13] Section 2361(a) of Title 19 of the Delaware Code provides a two-year statute of limitations for presenting claims for workers' compensation benefits.[14] Where a carrier and a claimant agree that benefits are payable, however, the statute of limitations extends to five years from the date of the last payment.[15] The Court in *Starun* held that if an employer's payment of benefits was not gratuitous, the carrier's payment created an *implied* agreement to continue to pay benefits. That finding, in turn, triggered the lengthened statute of limitations of 19 *Del. C.* § 2361(b).[16]

---

[12] 350 A.2d 765 (Del. 1978).
[13] *Id.* at 768.
[14] 19 *Del.C.* § 2361(a).
[15] *See* 19 *Del.C.* § 2361 (b) (providing that "where payments have been made . . . under an agreement approved by the Board or by an award of the Board, no statute of limitations shall take effect until the expiration of 5 years from the time of the making of the last payment[.]")
[16] *Starun*, 350 A.2d at 768; *see also McCarnan v. New Castle County*, 521 A.2d 611, 613 (Del. 1987) (examining the issue of an implied agreement to pay benefits and finding an *implied* agreement to pay benefits to extend only the statute of limitations pursuant to 19 Del. C. §2361(b))

14. Next, in *Tenaglia-Evans v. State Francis Hospital*,[17] the Delaware Supreme Court expanded this approach from the procedural statute of limitations context to the substantive context in a substantial evidence review. There, the Court affirmed an IAB finding that a carrier's payment of bills could not be considered credible evidence that supported compensability.[18] The record in that case demonstrated that the carrier had mistakenly paid a substantial number of bills submitted on behalf of the claimant.[19] Given that mistake, the Court held that the carrier did not pay the bills under "compulsion."[20] Absent that finding, the Board could not consider the payment of bills to have supported compensability.

15. Finally, in *Andreason v. Royal Pest Control*,[21] the Delaware Supreme Court further explained why it extended this reasoning to the substantive review of evidence. It named the approach the "feeling of compulsion" doctrine. Pursuant to that doctrine, the IAB must find that an employer made payments under a feeling of compulsion before it may consider them to be credible evidence of compensability.[22] It directly follows that because a payment made without compulsion does not qualify as credible evidence, such payment cannot be considered in a court's substantial evidence review on appeal. Notably, in other contexts, a finder of fact would be free to draw an inference regarding whether a party's conduct, including payments made toward an alleged obligation, constitute an admission of responsibility. Regardless,

---

and *New Castle County v. Goodman*, 461 A.2d 1012, 1014 (Del. 1983) (also focusing only upon the applicable statute of limitations issue when examining the "feeling of compulsion" issue).
[17] 2006 WL 3590385 (Del. Dec. 11, 2006).
[18] *Id.* at *3.
[19] *Id.*
[20] *Id.*
[21] 73 A.3d 115 (Del. 2013).
[22] *Id.* at 119.

there is common law rule that limits what constitutes credible evidence of compensability in this IAB-specific context.[23]

16.   Here, the Board found  that Genesis' payments of some of Ms. Cephas' bills meant Genesis accepted the disputed treatment to be compensable.[24] Consistent with those observations, the IAB also found that (1) the payments were *not* gifts, and (2) they were *not* based upon simple inadvertence.[25]   On the other hand, the IAB's Order provides that "*[t]here is no evidence that [Genesis'] partial payments of Dr. Roberts' treatment . . . [were] made under a feeling of compulsion.*"[26]   It would be error for the Board to find an implied agreement to pay, which in turn demonstrated an acceptance of responsibility, absent a finding of compulsion.  Because the Board's Order demonstrates that it made other findings consistent with compulsion, however, the Court requires further explanation from the Board.

17.   Pursuant to controlling law, an employer's payment of bills without a feeling of compulsion are evidentiarily insufficient to support a Board's compensability finding.  Here, the evidence regarding these payments is central.  Accordingly, the IAB must clarify its findings on remand.  When doing so, the IAB shall provide its findings regarding whether Genesis or its carrier made these payments under a feeling of compulsion.

---

[23] *See id*. at 125 (holding (1) that the "feeling of compulsion doctrine" was not abrogated by 19 *Del. C*. § 2322 (h), (2) applying the doctrine during a substantial evidence review, and (3) affirming the Board's finding that future bills were not compensable because other bills were paid without a feeling of compulsion).   Ms. Cephas argues, in part, that the failure of Genesis to take advantage of the mechanism present in 19 *Del. C*. § 2322 (h), that permits a carrier to identify its payments as being without prejudice to dispute future payments, provides further support for the Board's finding of an implied agreement.  The Delaware Supreme Court's holding in *Andreason*, however, would make that subsection irrelevant when the Board finds no compulsion.
[24] IAB Order at * 12.
[25] *Id.*
[26] *Id.* (emphasis added).

**WHEREFORE**, for the foregoing reasons, the matter is **REMANDED** with direction that, within sixty days of the date of this Order, the IAB provide the Court with a supplemental order clarifying its findings regarding the issue of compulsion and implied acceptance of responsibility. Jurisdiction is retained.

**IT IS SO ORDERED.**

/s/Jeffrey J Clark
Judge


cc:     Nancy Chrissinger Cobb, Esquire
        Walt Schmittinger, Esquire
        Industrial Accident Board
        Prothonotary