Snyder Appeal.

14

Argued November 14, 1958; reargued December 10, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Donald J. Goldberg*, with him *Henry F. Gingrich, Garfield W. Levy*, for appellants.

*Peter F. Cianci*, Assistant District Attorney, with him *Frederick O. Brubaker*, District Attorney, for appellee.

OPINION BY ERVIN, J., March 18, 1959:

These two appeals are from judgments of sentence for contempt of court for refusing to answer questions propounded to two witnesses in the court below. Appellants appeared as witnesses at the trial of William H. Fisher, who was charged with performing an abor-

tion upon Barbara Ann Snyder. At the trial Dr. James Z. Appel testified that on February 13, 1958 Barbara Ann Snyder was a patient in the Lancaster General Hospital suffering from the effects of an abortion. She was then called as a witness by the Commonwealth but refused to answer certain of the District Attorney's questions on the ground that the information sought might tend to incriminate her.[1]  After excusing the jury, the court took testimony bearing on the question of whether the privilege against self-incrimination had in fact been waived.  For this limited purpose the court below received into evidence the signed statement of Barbara Ann and, by way of anticipation, the statement of Dolores Jean Snyder, a sister of Barbara Ann. According to these statements Barbara Ann had twice become pregnant by one Thomas LiBrandi and on each occasion she was taken by her sister, Dolores Jean, to a Dr. Berberian in the City and County of Lancaster to "get rid of it."  Dr. Berberian administered shots and pills without success and then made arrangements for Dr. Fisher, of the City of Reading in the County of Berks, to perform an abortion.  Dr. Fisher performed abortions on Barbara Ann in February of 1957 and January of 1958 and on each occasion was paid $150.00 by Dolores Jean.  Barbara Ann became ill as the result of the second abortion and entered the Lancaster General Hospital on February 13, 1958.  These statements were made shortly thereafter.  Barbara Ann was called as a witness by the Commonwealth and was asked whether in the year 1958 she was a patient in the Lancaster General Hospital.  She refused to answer on the ground of self-incrimination.  The court below held her in contempt and committed her to the

---

[1] For an excellent opinion tracing the history of self-incrimination see *Schwinger Appeal*, 181 Pa. Superior Ct. 532, 124 A. 2d 123.

Berks County prison until she purged herself of the contempt by answering the question. Thereupon Dolores Jean was called as a witness by the Commonwealth. She and her sister had been indicted in Lancaster County, together with Dr. Berberian, on a conspiracy charge growing out of the same set of circumstances. She was asked when she had hitherto seen Dr. Fisher. She refused to answer on the ground of self-incrimination, whereupon the court below likewise adjudged her guilty of contempt with the same disposition as that of her sister. The present appeals were then taken.

The principal question on these appeals is whether the witnesses had waived their privilege against self-incrimination by answering the same questions in a prior written statement given to the detectives of Lancaster County in the course of their investigation. The court below was of the opinion that the written statements, given voluntarily after being advised that they need not make statements and that if they did, they could be used in court against them, constituted a waiver of their right against self-incrimination as long as the questions asked of them were confined to those which they had answered in their statements. The reasoning of the court below is found in the following quotation from its opinion: "This statement could clearly be used against the witness in her own trial, on charges pending against her in Lancaster County, if the statement was found to have been voluntarily given. How then could her answer, under oath, as a witness in the present case, more completely incriminate her? The answer is it could not." The error in this reasoning is pointed out in 8 Wigmore on Evidence, 3d ed., §2266, in the following language: "The rule excluding untrustworthy Confessions and the rule giving a Privilege against compulsory testimonial Self-Crimination

are sometimes not kept plainly apart,—and naturally enough, for not only have they the common feature of an acknowledgment of guilty facts, but also, by the test frequently employed (ante, §826) the test of voluntariness for confessions becomes almost identical with the idea of compulsion as forbidden by the privilege. Judicial expressions which blend the two into one principle might therefore sometimes be expected.

"But this confusion is radically erroneous, both in history, principle, and practice: . . . ."

The cases of *Com. v. Doughty*, 139 Pa. 383, 397, 21 A. 228, and *Com. v. House*, 6 Pa. Superior Ct. 92, 104, were cases in which the testimony of a defendant at his first trial was offered in evidence against him on a second trial of the same indictment, he having elected not to go upon the witness stand in the second trial. His former testimony was admissible just as a confession would have been, provided it was voluntarily given. This, however, is an entirely different question from the one presented in the present case, where the witness was being asked questions at the subsequent trial which tended to incriminate her. It is settled by the overwhelming weight of authority that a witness who testifies to incriminating matters on one trial, hearing or proceeding does not thereby waive the right to refuse to answer as to such matters on a subsequent, separate or independent trial or hearing.[2] Our Court in

---

[2] *In re Neff*, 206 F. 2d 149, 152; *Poretto v. United States*, 196 F. 2d 392; *Marcello v. United States*, 196 F. 2d 437; *Cullen v. Com.*, 65 Va. 624; *Temple v. Com.*, 75 Va. 892; *Georgia Railroad & Banking Co. v. Lybrend*, 99 Ga. 421, 27 S.E. 794; *Samuel v. People*, 164 Ill. 379, 45 N.E. 728; *Emery v. State*, 101 Wis. 627, 78 N.W. 145; *Miskimmins v. Shaver*, 8 Wyo. 392, 58 P. 411, 49 L.R.A. 831; *Overend v. Superior Court*, 131 Cal. 280, 63 P. 372; *In re Mark*, 146 Mich. 714, 110 N.W. 61; *Com. v. Phoenix Hotel Co.*, 157 Ky. 180, 162 S.W. 823; *People v. Cassidy*, 213 N.Y. 388, 107 N.E. 713; 58 Am. Jur., Witnesses, §99; 8 Wigmore on Evidence, 3d ed., §2276(4); 98 C.J.S. Witnesses, §456, at p. 314.

*In re Contempt of Myers & Brei*, 83 Pa. Superior Ct. 383, 394, speaking through Judge (later President Judge) KELLER, expressly answered this question, as follows: "Nor was it of any import in the case that Brei had testified before the coroner, and all that was desired of him was a repetition of that testimony. Notwithstanding his testimony before the coroner, he could not be compelled to testify to the same matters in court if it tended to incriminate him: Cullen v. Com., 24 Gratten (Va.) 624; Temple v. Com., 75 Va. 892." *Com. v. Tracey*, 137 Pa. Superior Ct. 221, 8 A. 2d 622, relied upon by the court below in its opinion, was a case in which the witness was held to have waived his privilege because he had already pleaded guilty and any testimony he could give would necessarily be less incriminating than his absolute plea of guilty to the charge.

Between the time the appellants' signed statements were taken in Lancaster County in February of 1958 and their claim of privilege at the Fisher trial in Berks County in September of 1958, they had been indicted in Lancaster County for conspiracy with each other and with Dr. Berberian. Thus the circumstances under which the questions were asked of them had greatly changed and they could well have had apprehensions as to the incriminating effect of their requested testimony which they might not have had on the earlier occasion. We are, therefore, of the opinion that the written statements made by these witnesses did not constitute waivers of their privilege against self-incrimination.

Barbara Ann, however, was in contempt for failure to answer the questions propounded to her for another reason. By a long line of decisions in Pennsylvania, starting with *Com. v. Bell*, 4 Pa. Superior Ct. 187, 194, and finding expression in *Com. v. Weible*, 45 Pa. Superior Ct. 207; *Com. v. Weaver*, 61 Pa. Superior Ct.

571, 580; *Com. v. Bricker*, 74 Pa. Superior Ct. 234, 239; *Com. v. Sierakowski*, 154 Pa. Superior Ct. 321, 327, 35 A. 2d 790, it is well settled in this Commonwealth that a woman who submits herself to a doctor to have an abortion performed is not an accomplice or *particeps criminis*. She is regarded rather as a victim. By testifying she does not expose herself to prosecution for the crime of abortion, nor may she be prosecuted for the crime of conspiracy. There can be no indictment for conspiracy to commit a crime where the concerted action of the defendants is part of the criminal act: *Com. v. Bricker*, supra, at p. 240.

The sentence of the court below as to Barbara Ann Snyder may therefore be sustained for a reason different from that assigned in its opinion: *Sherwood v. Elgart*, 383 Pa. 110, 115, 117 A. 2d 899; *Platt v. Phila.*, 183 Pa. Superior Ct. 480, 486, 133 A. 2d 857. There being no way in which Barbara Ann Snyder could be successfully prosecuted for any crime arising out of the facts in this case, she should have testified in the trial against Fisher and her failure to do so amounted to contempt of court, for which she was punishable. Her sentence, however, should have been for a definite term but this may be corrected by the court below upon the return of the record to it: *Rosenberg Appeal*, 186 Pa. Superior Ct. 509, 521, 142 A. 2d 449.

Dolores Jean Snyder, the sister of the victim, could have conspired with Dr. Berberian or with the defendant Fisher to commit a crime in which they alone participated and which was directed at Barbara Ann Snyder: *Com. v. Bricker*, supra, at p. 240. Dolores Jean Snyder, therefore, was not in contempt of court for refusing to answer the questions propounded to her.

In the appeal of Barbara Ann Snyder, No. 40 October Term, 1959, the record is remanded to the court below for the imposition of a sentence in accordance with the law.

In the appeal of Dolores Jean Snyder, No. 41 October Term, 1959, the judgment of sentence is reversed.

———

OPINION BY WRIGHT, J., CONCURRING IN PART AND DISSENTING IN PART:

Having consistently taken the position that the written statements made by the Snyder sisters did not constitute waivers of their privilege against self-incrimination, I am in full accord with the majority opinion so far as the determination of that question is concerned. I cannot go along, however, with the majority in holding that Barbara Ann Snyder was in contempt. It must be remembered that she was, and apparently still is, under indictment in Lancaster County for conspiracy. In any event, her testimony would involve an acknowledgment that she was guilty of fornication. I would reverse both judgments.

GUNTHER and WATKINS, JJ., join in this opinion.