MATTHEW ZUTZ, Appellant, v. STATE OF DELAWARE, Appellee.

(*May* 17, 1960.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*Robert C. O'Hora* for defendant-below, appellant.

*Joseph J. Longobardi, Jr.,* Deputy Attorney-General, for the State, appellee.

Supreme Court of the State of Delaware, No. 74, 1959.

BRAMHALL, J.:

Defendant was tried and convicted in the Superior Court of New Castle County under 11 *Del. C.* § 301, for the crime of abortion in that with intent to cause a miscarriage of one Christine Miller, a pregnant woman, by the use of an instrument, a long rubber tube, and an instrument with protruding wires, he endeavored to accomplish an abortion, said act not being necessary to preserve her life.

In support of the indictment the State offered testimony to prove the following:

John Campbell, by whom Mrs. Miller was with child, telephoned defendant, informing him that a friend of his was pregnant. He further stated that she was not in a position to have a child at that time and asked defendant if he could do something for her. Defendant suggested that Campbell call at his

office, which he did. At that time defendant advised Campbell that he thought he could help him, to bring the woman to his office and to be prepared to pay a fee of $400 in cash. Campbell later telephoned defendant, stating that he was unable to raise the $400. Defendant told him to come anyway. Campbell and Mrs. Miller several days later called at defendant's office. Defendant took Mrs. Miller into his inner office and thereupon undertook to procure a miscarriage in the manner heretofore alleged. When defendant and Mrs. Miller came out, defendant said to Campbell, who had been waiting in the outer office, "something should happen within forty-eight hours." Defendant had previously informed Mrs. Miller, while in the inner office, that she should "terminate". Nothing having occurred within the time specified, Campbell and Mrs. Miller, by appointment, called at defendant's office. At that time Campbell paid to defendant said sum of $400. Using the same procedure as before, defendant again endeavored to procure a miscarriage for Mrs. Miller. Two or three days later Mrs. Miller became ill and was removed to the Delaware Hospital, where she had a miscarriage.

Dr. Gehret, who examined Mrs. Miller at the hospital, testified that he found an inflammation in her womb and that she had a miscarriage at the hospital. He conceded that her condition was consistent with a natural miscarriage except that in that event it would have been unlikely that she would have had a temperature. He was unable to say whether anything had been inserted in the womb or that the miscarriage was not the result of natural causes.

Having obtained from Mrs. Miller the name of defendant, Detectives Purnell and Smith called at defendant's office. Defendant voluntarily accompanied them to the police station. Purnell testified that defendant admitted that he had treated Mrs. Miller and that the nature of his treatment was to effect a menstrual flow and to bring on a possible miscarriage. Defendant informed the detectives that he used no instruments but

resorted to the use of a thyroid pill which would activate the glands.

In his briefs and in his argument before this Court, defendant excepted to the refusal of the trial judge to direct a verdict for defendant on the ground of the insufficiency of the evidence. Defendant gave as his reasons for such exception a number of alleged improbabilities and inconsistencies in the testimony. He further stated that the testimony of Campbell and Mrs. Miller, being that of accomplices, should have been corroborated. He also alleged that the testimony offered by the State to sustain a conviction was consistent with defendant's innocence. He stated that such proof did not make such a definite and factually consistent showing of guilt as to warrant the trial judge in submitting the case to the jury.

It is not clear to us how the reasons given by defendant in support of this objection relate to the question of whether or not the trial judge should have directed a verdict for defendant. As we view these objections they go only to the weight of the evidence, which, of course, is for the jury to determine. Nevertheless, we shall consider each of the reasons advanced by defendant in some detail.

The alleged inconsistencies and improbabilities of which defendant complained were numerous. By and large they were such as would usually be found in the trial of criminal cases. They consisted generally of inconsistencies in the testimony of Campbell and Mrs. Miller relating to the payment of defendant's fee, the alleged failure of defendant to ascertain whether or not Mrs. Miller had previously consulted another physician and the failure of Mrs. Miller to give to police the name of defendant until several days after she had been taken to the hospital. To attempt to consider them in detail would enlarge this opinion unduly. We shall therefore treat them generally.

The rule is too well established that a verdict of a jury, based upon competent evidence, even though conflicting,

will not be set aside upon appeal. An appellate court does not weigh the testimony; to do so would usurp the function of the jury. *Delaware City, S. & P. S. N. Co. v. Reybold,* 8 *Houst.* 203, 14 *A.* 847. The only thing which an appellate court may do in such case is to determine if there was competent evidence upon which the verdict might reasonably be based. *Turner v. Vineyard,* 7 *Terry* 138, 80 *A.* 2d 177. If there was, as we believe to be the case here, the judgment of conviction must be affirmed.

Defendant further contends that both Campbell and Mrs. Miller were accomplices and that their testimony should have been corroborated in some material part by either direct or circumstantial evidence. He also asserts that the testimony of one accomplice cannot be corroborated by another. He makes no complaint about the charge of the Court on this question.

Assuming that both witnesses were accomplices, we think that their testimony was fully substantiated. The testimony of the police officer as to defendant's admission; the testimony of Dr. Gehret as to the result of his examination and the fact that the miscarriage occurred at the hospital; the testimony of Dr. Wendel, who was consulted by Mrs. Miller prior to her call on defendant, that both Campbell and Mrs. Miller called at his office and consuted him relative to Mrs. Miller's pregnancy; and the hospital records showing "Foetus expelled as a result of criminal abortion", corroborated the testimony of these witnesses in practically every important respect.

Although counsel for both the State and defendant agreed that Mrs. Miller was an accomplice and, presumably because of such an agreement, the trial judge in his charge considered her as an accomplice, we think this is a matter for further consideration here.

It is generally held in most states that a woman in an abortion case is not an accomplice. *Commonwealth v. Fisher,* 189 *Pa. Super.* 13, 149 *A.* 2d 666; *Basoff v. State,* 208 *Md.* 643, 119

*A.* 2d 917; *State v. Montifoire,* 95 *Vt.* 508, 116 *A.* 77; *State v. Hyer,* 39 *N. J. L.* 598. The reasoning of the courts seems to be that the woman is generally regarded as the victim of the crime rather than a participant in it. *Basoff v. State, supra; Wilson v. State,* 36 *Okla. Cr.* 148, 252 *P.* 1106; *Smartt v. State,* 112 *Tenn.* 539, 80 *S. W.* 586. See 1 *Wharton Cr. L. & Pr.,* p. 190.

In the case of *Turner v. State,* 11 *Terry* 590, 137 *A.* 2d 395, we said that the generally accepted test as to whether a witness was an accomplice was whether the witness himself could have been indicted as an accomplice or accessory: that, if he could not, then he was not an accomplice. 11 *Del. C.* § 301, the applicable statute in this case, provides:

"Whoever, with the intent to procure the miscarriage of any pregnant woman, * * * administers, advises, prescribes or causes to be taken by her, any poison, drug, medicine or other noxious thing, or uses any instrument or other means, whether the miscarriage is accomplished or not, is guilty of a felony, * * *."

Obviously, the language of this statute applies only to the person or persons, other than the woman, who may be instrumental in procuring the abortion and she could not be indicted under this statute. We accordingly hold that Mrs. Miller was not an accomplice.

Defendant asserts that the evidence in this case offered by the State was consistent with defendant's innocence. He states that the medicine prescribed by Dr. Wendel seems to have been no different physiologically from the thyroid pill which defendant in his statement alleged that he gave to Mrs. Miller. He also refers to Dr. Gehret's admission that there was no definite proof that any thing was ever inserted in Mrs. Miller; he states that Dr. Gehret found no evidence of a tear and that the infection found by him could have accompanied a natural miscarriage.

There is nothing in the record to show that the medicine prescribed by Dr. Wendel and that given by defendant were

the same physiologically. At any rate, according to defendant's statement to the police, the purpose for which defendant's medicine was given was quite different. While Dr. Gehret's testimony did not show specific evidence of a criminal abortion, neither did it negative such an assertion. The State's case was predicated upon the direct testimony of Campbell and Mrs. Miller as to the circumstances under which the criminal act was committed. This is direct testimony, sufficient to prove all the material facts necessary to be proven in order to establish defendant's guilt without indulging in any inferences or presumptions. There is no merit to this contention.

■ Defendant objects to the refusal of the trial judge to strike from the record Campbell's answer as to the meaning of the words "something should happen within forty-eight hours" as reversible error. Campbell testified that immediately after defendant and Mrs. Miller returned to the outer office of defendant, the day defendant first saw her, defendant stated to Campbell, "something should happen within the next forty-eight hours."

We think that in the setting in which this conversation occurred the meaning of these words is obvious. Defendant knew the purpose for which Campbell and Mrs. Miller called at his office. He had examined her and knew of her condition. It was perfectly clear to Campbell and Mrs. Miller—and would have been to anyone else under the same conditions—that defendant was referring to the miscarriage which all three had hoped would be accomplished. There was no error.

Defendant next objects to the refusal of the trial judge to permit counsel for defendant to ask the witness Campbell the question "When have you been arrested in this case?"

Defendant contends that the purpose of this question was to discover whether or not the State had promised Campbell a reward for his assistance or whether the circumstances were such as to lead the witness to believe that he would be benefited

by testifying untruthfully on behalf of the State. The State objected to this question as being inflammatory. The trial judge in sustaining the objection stated that assuming that the witness had not been arrested this did not necessarily mean that he might not be arrested at a later date.

Counsel for defendant apparently withdrew the question when he stated to the Court: "I understand the objection now as an objection to inflammatory questions. I will try to ask the question in a less inflammatory manner." He did not follow up by rephrasing the question, although the State indicated that it would have no objection to any questions as to whether the witness was an accomplice or for the purpose of impeaching his credibility as a witness.

The widest latitude is permitted in the cross-examination of an accomplice, and properly so. Counsel may test his veracity or question his motives, his bias, his interest, his relation to the crime, the persons connected with it and any other matters tending to impeach his fairness or impartiality. 3 *Wharton's Cr. Evidence*, p. 245. Here the Court and counsel for both the State and defendant apparently assumed that the question by defendant's counsel was objectionable as being inflammatory. For some reason defendant did not see fit to rephrase his question. It must be presumed, therefore, that counsel for defendant abandoned his effort to do so.

Assuming that counsel for defendant should have been permitted to ask the witness this question as it was phrased, we do not think that defendant was prejudiced thereby. The witness had been advised by the Court that his testimony could subject him to criminal prosecution. It was obvious to the jury that the witness was an accomplice to the commission of the crime and that as such accomplice he had the strongest motive to collaborate with the prosecution. Under the circumstances the mere date of the arrest would have added nothing to what the jury already knew. Moreover, there was no predicate for the

question since it had not been shown that the defendant had been arrested.

The judgment of the Superior Court will be affirmed.