Commonwealth *v.* Lomax, Appellant.

6

Submitted June 14, 1961. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

Before SLOANE, P. J.

*Eddie Lomax,* appellant, in propria persona.

*Patrick F. Casey, Stanley M. Schwarz,* and *Arlen Specter,* Assistant District Attorneys, *Paul M. Chalfin,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, September 12, 1961:

Defendant, Eddie Lomax, was tried before a jury in the Court of Quarter Sessions of Philadelphia County on nine indictments charging him with the illegal possession and sale of drugs.[1] Defendant was found guilty on all indictments, after which he moved for arrest of judgment and for a new trial. These motions

---

[1] "No person shall have in his possession or under his control, or deal in, dispense, sell, deliver, distribute, prescribe, traffic in, or give away, any of said drugs." Act of July 11, 1917, P. L. 758, §4, 35 PS §854.

were denied by the court below. Defendant was sentenced to pay a fine of $500 and to undergo imprisonment at the Eastern State Penitentiary for a period of not less than five years nor more than ten years on bills Nos. 47 and 48. The sentences were to run consecutively. Sentences on the other seven bills were suspended. Defendant has appealed from his sentences.

In his appeal, defendant questions the sufficiency of the evidence to support the convictions, and in the alternative raises the following issues: (1) That it is a violation of due process to permit a witness convicted of a crime and awaiting sentence to testify in a criminal proceeding; (2) that the court erred in not properly charging the jury on the law of alibi; (3) that the court erred in not granting a motion for withdrawal of a juror upon an alleged violation of the court's sequestration order; (4) that defendant should be given a new trial because the Commonwealth did not produce "eye witnesses" who were available; and (5) that the court erred when it expressed its opinion concerning defendant's veracity and guilt.

The facts are adequately stated in the opinion of Judge SLOANE, as follows:

"As must be expected, diverse and many witnesses testified. Because several of defendant's objections pertain to less than all the indictments, the evidence is discussed seriatim on a bill to bill basis, and though laborious, it seems better to do so.

"Bill 49. A police officer who operated as an undercover buyer of narcotics for the Special Investigations Squad, William C. Hanton, testified as to the first purchase. This occurred on March 7, 1959 at 3:00 P.M. in the hall way of 1404 W. Jefferson St. One 'C. J.' (Charles Hamm)* went together with Han-

---

"* 'C. J.' was being tried for sale and possession of drugs before another court. On advice of counsel he refused to testify in

ton to defendant's apartment. Upon arrival there, 'C. J.' told defendant that Hanton wanted marihuana and cocaine. In Hanton's presence defendant gave 'C. J.' a brown paper bag containing loose weed and some other objects. 'C. J.' turned and gave what he received to Hanton, i.e., a brown paper bag containing loose weed and two small capsules containing white powder. Hanton gave 'C. J.' twenty dollars, whereupon 'C. J.' left him in order to go back and 'straighten out' with Lomax. Hanton took the bag and capsules to the headquarters of the Special Investigations Squad, where, after marking them for identification, turned them over to his superior, Officer Roane.

"Bill 47. On March 14, 1959 at 3:30 P.M. Hanton met defendant at 15th and Jefferson Sts. Although 'C. J.' was present, he remained on the sidewalk while Hanton and defendant went to the third floor apartment at 1404 W. Jefferson St. There defendant gave Hanton five small capsules containing white powder, in return for which Hanton gave defendant twenty-five dollars. Hanton then took the capsules to 26th and York where he turned them over to Officer Roane.

"Bill 48. On March 17, 1959 at 9:00 A.M. Hanton went to defendant's apartment where in exchange for fifty dollars he received from defendant a bag containing white powder. This bag was taken to 26th and York Sts. and given to Officer Roane.

"James Thompson, a convicted felon, testified as to four additional transactions. On April 8, 1959, this witness was convicted for unlawful sale and possession of drugs and, at the time of testifying in the instant case, was awaiting sentence. He stated, though, that while no promises or threats had been made to him, he hoped for leniency from the sentencing judge.

---

the instant case because of possible self-incrimination and while available was not called by either prosecution or defense."

"Bill 921. In the early part of October 1958, Thompson went to defendant's residence on Jefferson Street where, for five dollars, defendant gave him five reefers (marihuana). Thompson then turned these over to Hanton for five dollars. This witness later testified that while he received five reefers from defendant, he only gave four to Hanton.

"Bill 922. On the following day (still early in October) in the Delmar Bar on Columbia Avenue, Thompson again met defendant who gave him ten sticks of marihuana for ten dollars. These were in turn given to Hanton for ten dollars.

"Bill 923. On a Friday of the next month (November, 1958) at Thompson's house defendant sold him five sticks of marihuana for five dollars. As with the preceding purchases these were resold to Hanton for five dollars.

"Bill 924. The final sale involving Thompson and defendant occurred in the middle of a week in November, again at Thompson's house on Fifteenth Street. On that occasion defendant sold Thompson a bag of loose marihuana for ten dollars. Thompson then resold this to Hanton for ten dollars in the Delmar Bar on a Wednesday.

"The next two transactions were purchases from defendant by William Lee Hodge. Hodge was arrested on June 29, 1959 and was indicted for the unlawful sale and possession of narcotics. At the time of testifying he was awaiting his own trial, he said no promise or threat had been made to secure his testimony.

"Bill 925. At the instigation of one Thomas Rambert (alias June or Junior) who at the time was with Hanton, this witness met with defendant at 9:00 P.M. on June 12, 1958 and obtained from defendant a package understood to contain marihuana. Hodge paid defendant five dollars for this package, after which he returned to the house where he had earlier met with

Rambert and Hanton. He informed Rambert that he had left the package in the hallway and was reimbursed five dollars by Rambert. Rambert in Hanton's company retrieved the package.

"Bill 926. The final transaction in this case once again commenced with a meeting of Hodge, Rambert and Hanton on September 18 or 19, 1958. Hanton gave Hodge five dollars, and the latter went to defendant's apartment on Jefferson Street where he again picked up a package from defendant for which he paid five dollars. He returned to Rambert and Hanton where he turned the package over to Hanton."

Officer Hanton was recalled to corroborate the testimony of Thompson and Hodge. Officer Roane testified that he received from Officer Hanton certain paper bags containing capsules, weed, and white powder, and sent them to the police laboratory for analysis. Two police chemists testified that they made an analysis of the substances brought by Roane to the laboratory, and that the loose weed and the weed contained in cigarette form were marihuana and the white powder was cocaine.

Defendant took the stand in his own behalf and denied the charges against him; he offered nothing in corroboration.

After considering the evidence in a light most favorable to the verdict ( *Com. v. Fisher*, 192 Pa. Superior Ct. 288, 290, 161 A. 2d 903), we feel that it was clearly established that Lomax had drugs in his possession and sold them in violation of the statute. The evidence is more than sufficient to permit a jury to conclude beyond a reasonable doubt that the defendant was guilty as charged.

Defendant contends that the testimony of Thompson and Hodge violated due process, since they were convicted felons awaiting sentence and gave their tes-

timony with the hope of leniency.[2] The mere fact that a witness has been convicted of crimes does not preclude him from testifying in a criminal prosecution His convictions only go to his credibility and he may be cross-examined as to them if they involved felonies or misdemeanors of the nature of crimen falsi. *Com. v. Fields*, 171 Pa. Superior Ct. 177, 181, 182, 90 A. 2d 391. Both Thompson and Hodge testified that no promise or threat had been made to secure their testimony. The criminal records of the witnesses were brought out by both the Commonwealth and the attorney for defendant. Further, the trial judge correctly charged on this point. We feel that there was no prejudicial error in allowing the testimony, and therefore no violation of due process.

Defendant next objects to the court's charge on alibi. It is doubtful whether or not the evidence warranted a charge on alibi. Defendant introduced an unemployment record which he interpreted as proving the impossibility of his commission of the offense on June 12, 1958 (bill No. 925), and on September 19, 1958 (bill No. 926). Defendant testified that on June 12, 1958, he reported to his union hall in New York at 9:30 a.m. However, from that time on he is not specific as to his whereabouts. He states that he was in the hall the entire day and later returned to his home in New York. The Commonwealth's evidence established that the offense took place at 9:30 in the evening. Defendant did not offer an alibi to account for that hour or for the entire evening.

---

[2] This issue was not raised by the defendant in his motion for a new trial and arrest of judgment, nor did he present it to the court below when the motions were argued. We have repeatedly stated that matters not properly raised in the court below cannot be invoked on appeal. *Com. v. DeMarco*, 193 Pa. Superior Ct. 16, 18, 163 A. 2d 700. However, under the circumstances, we shall deal with the issue now raised.

Where the defendant relies upon an alibi, the evidence in support thereof must cover the time when the offense is shown to have been committed so as to preclude the possibility of the defendant's presence at the time and place of the crime. *Com. v. Larue,* 158 Pa. Superior Ct. 219, 221, 44 A. 2d 535; *Com. v. McQueen,* 178 Pa. Superior Ct. 38, 40, 112 A. 2d 820. The trial judge in his charge stated: ". . . this alleged occurrence, on June 12, 1958, took place twelve hours later, or ten hours later. You and I know that you can get to New York and back in less than eight, nine, or ten hours, because New York is only about a hundred miles away." This statement was not error. With this obvious proximity of New York and Philadelphia, an alibi covering 9:30 a.m. would not create an alibi for 9:30 p.m. Defendant offered no evidence to show that he could not have been in Philadelphia when the offense was committed. The court further charged on burden of proof and on reasonable doubt. Under the facts of this case we do not think any more was required.

Defendant next complains that Hodge violated the court's sequestration order. This objection goes only to bills Nos. 925 and 926. The purpose of separating the witnesses is to prevent the shaping of testimony to correspond with that given earlier in the trial. *Com. v. Ross,* 190 Pa. Superior Ct. 145, 152, 153, 152 A. 2d 778. One of the alleged violations of the court order was that Hodge sat with his wife in the hall outside the courtroom while waiting to testify. However, Hodge was never instructed not to be with his wife, and testified that he did not discuss the case with her. The other alleged violations were the mere saying of "good morning" to Officer Roane, and an incident where Officer Roane asked the witness if he wanted to see his statement, at which time the witness said it was not necessary and walked away. The trial judge

considered whether or not his order was violated, and in his discretion felt that the alleged violations did not suggest the need for withdrawal of a juror. We agree with the court below that the alleged violations revealed no evidence of suspicion of the shaping of testimony, nor did they result in prejudice to the defendant.

Defendant's next contention is based on the Commonwealth's failure to produce an alleged "eyewitness" known as "June," "Junior," or "Thomas Rambert." There was testimony that Rambert was present during several transactions involving police officers and other parties but not the defendant. This testimony is relevant only to bills Nos. 921, 922, and 926.

The calling of witnesses is within the discretion of the district attorney under the general direction of the trial judge. *Com. v. Thurman,* 167 Pa. Superior Ct. 642, 647, 76 A. 2d 483. A district attorney need not call as witnesses all persons that the defense may think desirable. *Com. v. Karamarkovic,* 218 Pa. 405, 408, 67 A. 650. In the instant case, Rambert was not an eyewitness to any of the transactions involving defendant. He might have been an eyewitness to events between Hanton and Thompson or Hanton and Hodge, but there is no allegation that he could identify the defendant or testify as to alleged sales made by him. Under these circumstances we cannot say that the Commonwealth was duty bound to call such a witness. Its failure to provide Rambert was not error.

Finally, defendant contends that the trial judge erred when he expressed his opinion concerning defendant's veracity and guilt. It has been properly stated in *Com. v. Chambers,* 367 Pa. 159, 164, 79 A. 2d 201, 204: "While the main purpose of a judge is to state and explain the law and briefly review the evidence, it is always the privilege and sometimes the duty of a trial judge to express his own opinion, including

his opinion of the weight and effect of the evidence or its points of strength and weakness or even the guilt or innocence of the defendant and the verdict which, in his judgment, the jury should render, provided (1) there is reasonable ground for any statement he may make; and (2) he clearly leaves to the jury the right to decide all the facts and every question involved in the case, regardless of any opinion of the court thereon: . . ."

The trial judge prefaced his entire charge by stating to the jury that they were the judges to finally believe or disbelieve the witnesses and to find the guilt or innocence of the defendant. He repeated this several times during the charge. In addition, the trial judge cited his reasons for saying that he did not believe the defendant. We feel that all the necessary safeguards were present in the court's charge to the jury. The court's charge was proper and not in error.

The judgments of sentence of the court below are affirmed.