Commonwealth *v.* Campbell et al., Appellants.

Argued September 18, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

reargument refused December 11, 1961.

Before ATKINS, P. J.

*Martin Vinikoor,* with him *Victor Dell'Alba,* and *Vinikoor and Criden,* for appellants.

*Frank B. Boyle,* District Attorney, with him *Jesse L. Crabbs,* First Assistant District Attorney, for Commonwealth, appellee.

OPINION BY MONTGOMERY, J., November 16, 1961:

The three appellants were indicted separately under section 718 of the Act of June 24, 1939, P. L. 872, 18 P.S. 4718, and were convicted on the third count only, of unlawfully, willfully, and feloniously using a certain instrument and means, the nature of which instrument and means was unknown, upon certain women with the intent to procure miscarriage of them.

The Commonwealth presented all of the evidence that was offered in the case. All three defendants elected not to testify nor to offer any other evidence on their behalf.

The Commonwealth's evidence discloses the following factual situation. On the evening of November 21, 1958, the Pennsylvania State Police, armed with a search warrant, stationed themselves near a house located in Heidelberg Township, York County, observing the approach of two cars, whose drivers and passengers entered the house. A few minutes after these people entered the house the State Police entered by using a key which they had previously obtained from the owner of the premises and, upon entering, observed appellant Campbell sitting on a stool beside an operating table and dressed in a white surgical gown and cap, a pair of rubber gloves on his hands, and a surgeon's mask tied around his face.

Appellant Ensor was found removing a white uniform similar to that worn by nurses. Appellant Lang was sitting in an adjoining room in ordinary street

clothes. In the several rooms of the house two women were found in beds, another one sitting on a bed dressed in her slip, and two others fully clad. In the room where appellant Campbell was seated, in addition to the operating table, the officers found various surgical instruments, gauze, drugs, and other medical items.

The two women who were found occupying the beds, and the one in her slip, were taken to the office of Dr. Thomas Hart, where they were examined by him. His examination disclosed evidence of surgical procedure in the region of the reproduction organs of two of the women, Nancy Reese and Elizabeth Troyer, but not on the third girl, Hazel Reed. One of the other women, Barbara Perry, a Commonwealth witness, had consulted Dr. Hart as a private patient sometime previously. Dr. Hart had diagnosed that she was in a pregnant condition, but it was not contended that any abortion had been performed upon her.

Appellants were all interrogated that evening, at which time the appellant Campbell signed a written statement in which he said he had been performing surgical procedures upon women for the purposes of inducing abortion or miscarriage, explaining in detail the occurrences of that particular evening, and that he received a fee of $200 for each operation.

Appellant Ensor, in a verbal statement to the police, said that she was employed by Campbell; that she had training as a practical nurse; that her duties were to administer to the general needs of the women who came to the house.

Appellant Lang said that he had heard Campbell was performing abortions; that he was employed by Campbell to work on his farm, and that on the particular evening in question he had been instructed by Campbell to pick up and transport two of the women to the house, using back country roads.

Appellants' first contention is that they were denied their constitutional rights to a fair trial by the failure of the Commonwealth to produce the alleged victims of the abortions, and by the withholding of evidence that they would not testify for the Commonwealth. Although the Commonwealth must try a case fairly, and the district attorney is not a "vindictive seeker for vengeance", the calling of witnesses is within the discretion of the district attorney under the general supervision of the trial judge. The Commonwealth is not obliged to call all eyewitnesses in a criminal prosecution, nor a particular eyewitness, where the district attorney has reason to believe that the eyewitness is unreliable. *Commonwealth v. Horn,* 395 Pa. 585, 150 A. 2d 872; *Commonwealth v. Palermo,* 368 Pa. 28, 81 A. 2d 540; *Commonwealth v. Repyneck,* 181 Pa. Superior Ct. 630, 124 A. 2d 693; *Commonwealth v. Lomax,* 196 Pa. Superior Ct. 5, 173 A. 2d 710.

In the instant case these women were not victims in the adverse sense of the word but, rather, individuals who had voluntarily undertaken to have an abortion performed upon them. Such a person is described not as an accomplice or particeps criminis, but *rather* as the victim. *Snyder Appeal,* 189 Pa. Superior Ct. 13, 149 A. 2d 666; *Commonwealth v. Sierakowski,* 154 Pa. Superior Ct. 321, 35 A. 2d 790. Under these circumstances their reliability in testifying would certainly be questionable. Subpoenas were issued for three of the women, two of which were not honored, and the third of which could not be served because the witness could not be found. The defense was fully aware prior to the trial and again informed the first day of the trial that the Commonwealth would not call these witnesses if they did not voluntarily appear upon subpoena; and there was nothing to prevent the defense from calling them if their testimony was to be adverse. The lower court did inform the jury that they could

consider the testimony of the two witnesses who were served and failed to appear to be adverse to the Commonwealth, but refused to instruct that the witness who could not be found would also be adverse. It is argued that the court's refusal to so charge as to the third one was prejudicial error. We see no error in this unless it be in giving the defendants the benefit of having the jury draw an unfavorable inference from the absence of the two girls who were served. These witnesses were available to both the Commonwealth and the defendants. The Commonwealth had no particular control over any of them; and it has been pointed out previously that such persons might reasonably be expected to testify for the defendants and not the Commonwealth. Under these circumstances the rule has no application. *Commonwealth v. Black,* 186 Pa. Superior Ct. 160, 142 A. 2d 495.

Aside from the statements of the defendants, other evidence presented by the Commonwealth shows unequivocally that two abortions, or attempts to commit two abortions, had taken place. We conclude therefore, that there was no abuse of discretion on the part of the trial judge in concluding the cases without insisting on the appearance of these witnesses, and that there has been no violation of any of defendant's rights. We think it also significant that the defendants, at no time during the trial, requested the presence of these witnesses or the enforcement of the subpoenas that had been served upon them.

Appellants further contend that they were denied their constitutional rights by the lower court's refusal to permit counsel to cross-examine on the question of the probable cause for issuance of the search and seizure warrant.

At the time of the trial and prior to the recent decision of the Supreme Court of the United States in *Mapp v. Ohio,* 367 U. S. 643, 6 L. Ed. 2d 1081, which

prohibited state courts from admitting into evidence any matter which was obtained by an unlawful search and seizure, Pennsylvania had as its rule that even though a search warrant was illegally issued, it did not affect the admissibility of evidence obtained under it. Consequently, when the court below ruled that the defense counsel could not cross-examine on the question of probable cause or issuance of a search warrant, it correctly applied the existing law. Appellants admit this, but claim that in light of the complete change in the law the lower court should be reversed and a new trial granted. This contention would be meritorious if illegality in obtaining the search warrant had been shown. However, there is nothing in the record to show illegality. During the course of the trial, counsel for defense, in his cross-examination of the police officer who obtained the warrant, indicated that he was not attacking its legality but was merely attempting to show bias. The officer indicated that the complaint was made on behalf of the owner of the premises. The questions of counsel elicited no showing of illegality, or for that matter bias or prejudice, in the obtaining of the search warrant. Therefore, the change in the law effected by *Mapp v. Ohio* (supra) is not applicable.

The appellants further contend that the lower court committed prejudicial error in its ruling on the admissibility of certain evidence. Firstly, the court's admission of a large quantity of photographs and alleged abortion paraphernalia was cumulative. The extent or size of the quantity of evidence produced and admitted cannot be said to be prejudicial unless it was so repetitive that it could possibly sway the jury in its determinations. The Commonwealth followed up each item with testimony and attempted to coalesce them, presenting the complete picture to the jury. As the learned judge in the court below pointed out, while it may not have been necessary for the Commonwealth to intro-

duce all of the exhibits that it did, such as everyday household items, the appellants were not prejudiced thereby.

Secondly, appellants objected to the admission of posed photographs of appellant Campbell, claiming that when the police photographers had Campbell submit to various poses including the raising of his surgical mask, it constituted a re-enactment of the crime. In *Commonwealth v. Johnson,* 368 Pa. 139, 81 A. 2d 569, relied upon by the appellants, it was held to be error for the court to admit into evidence photographs for which the defendant had been made to pose at the instance of the police. However, we are in agreement with the lower court that the instant case is not factually similar to the *Johnson* case and can be readily distinguished. In the *Johnson* case the defendant was not apprehended for six months after the crime, and when taken to the scene of the crime he posed for certain photographs indicating his activities in the commission of the crime. Here, the photographs were taken immediately after the officers had entered the premises where they found appellant Campbell seated in the position shown in the photograph; and evidence indicated he had remained in this position. The only thing the police requested was that he replace his surgical mask in the position it was when they had entered.

Admission of photographs and their use rests largely in the trial judge's discretion. *Commonwealth v. Sydlosky,* 305 Pa. 406, 158 A. 154; *Commonwealth v. Winter,* 289 Pa. 284, 137 A. 261; *Commonwealth v. White,* 160 Pa. Superior Ct. 522, 52 A. 2d 360. In *Commonwealth v. Carelli,* 281 Pa. 602, 127 A. 305, it was held that where a defendant actively participates in the reproduction of the circumstances and of the location of the parties at the time and place of the crime, a photograph then made is admissible in evidence although taken more than one month after the occurrence.

In the *Johnson* case the Court did not distinguish the *Carelli* case or recite any other precedents. The basis for its holding of inadmissibility was that such photographs of the defendant, pointing to what he had actually done, would be likely to impress a jury to such an extent as to virtually preclude the possibility of acquittal. However, in the *Carelli* case, where the photograph showed the position of the defendant and the setting at the time of the crime, and even more so in the present case where the photographs merely show the scene as it was at the time of the arrest, the pictures themselves do not portray a re-enactment of the commission of the crime but rather elucidate and corroborate the testimony. Error will not be predicated on the admission of such exhibits, unless there is a flagrant abuse of discretion, and none is apparent here.

Thirdly, the appellants contend the admission of the opinion-evidence of the physician-witness was error. It is clear from the testimony that the physician-witness was not merely testifying as an expert witness who would be entitled to give his opinion on an assumed state of facts, but he was testifying as to what his personal examination of the women disclosed when they were brought to him by the police. His examination of the women was not made for the sole purpose of qualifying him as a witness, but also for medical reasons to determine whether their health was affected. He administered medicine to them and prescribed further medications. His testimony consisted of a description of the physical condition of the women, stating certain opinions based on his examination. Under these circumstances, he was clearly competent to give his medical opinion. *Commonwealth v. Neill,* 362 Pa. 507, 67 A. 2d 276.

Fourthly, the appellants contend that it was prejudicial error for the lower court to fail to charge the jury on the identity of the victims of the abortions,

since the Commonwealth's testimony indicated that there were five women found on the premises and that only two of them, in the opinion of the physician, had been aborted. The identity of the victims was clearly in evidence from the testimony of the police officers and the physician who saw all of the alleged victims. Although appellant Campbell did not identify the victims, the physician testified as to the abortions having been performed with no interim period having passed between the time they were picked up in the presence of Campbell and the time he examined them. It should have been clear to the jury from the testimony and from the charge of the court exactly what had happened. If there was any error in the lower court's failure to identify the victims, it certainly cannot be held to be prejudicial to the appellants.

Other alleged errors in the charge, in addition to those previously discussed, relate to (1) the effect of the testimony of Dr. Hart; (2) the effect of the testimony of Barbara Perry. Particular objection is made to the sentence, "Now, if you believe that testimony (relating to Dr. Hart's finding of evidence of surgical interference on two of the girls but not on the third), . . . then all three of these defendants would be guilty of the offense." A reading of the charge clearly shows that this sentence alone is taken out of context and must be read in connection with other parts of the charge. Dr. Hart was referring to his examinations. As to the Reed girl, who showed no evidence of surgical action, the court said, ". . . no conviction of any of these defendants could be sustained with regard to anything that allegedly was done with regard to her. . . . With regard to the other two, of course, you have entirely different situation." Then he proceeds to make the statement previously mentioned to which defendants object, which must be read in connection with other parts of the charge describing how persons other than

the one who actually committed or attempted the abortion may become criminally involved. We think the charge fully and correctly informed the jury on this point, particularly with the additional information given to it following this objection.

Defendants' other objection to the charge, in relation to the testimony of Dr. Hart, concerns the failure of the trial judge to describe the doctor's conclusion after examination as an opinion and not a fact. In view of the other parts of the charge placing credibility of the witnesses and the weight of the evidence in the hands of the jury to resolve, and the further fact that no specific exception was taken and no request made on this point, we conclude that it was not fundamental error, if error at all, as to be covered by a general exception. Defense counsel objected to the doctor giving his opinion, but not to the charge as to the effect. We have previously discussed his objections to the evidence.

The objection to the charge as it relates to the testimony of Barbara Perry concerns the failure of the trial judge to limit her testimony to the question of intent. No request was made for such an instruction. In fact, no mention of the testimony of this witness was made in the charge. Inadequacy of instruction is insufficient. A party may not remain silent and take his chances on a verdict and then, if it is adverse, complain of mere inadequacy which could have been corrected. *Koenig v. Flaherty,* 383 Pa. 187, 117 A. 2d 719. We do not conclude the inadequacy in this case to be fundamental.

It is further contended that the sentence imposed upon appellant Lang was incorrect. The court sentenced the appellant, Charles William Lang, to undergo imprisonment in the York County jail for a period of eight months, and to pay the costs of prosecution.

The Penal Code on Abortion, Act of June 24, 1939, P. L. 872, §718, 18 P.S. 4718 provides that a defendant:

". . . upon conviction thereof, shall be sentenced to pay a fine not exceeding three thousand dollars ($3,-000), or undergo imprisonment by separate or solitary confinement at labor not exceeding five (5) years, or both."

The Act of June 19, 1911, P. L. 1055, as amended, 19 P.S. §1057 provides:

"Whenever any person, convicted in any court of this Commonwealth of any crime punishable by imprisonment in a State penitentiary, shall be sentenced to imprisonment therefor in any penitentiary or other institution of this State, or in any county or municipal institution, the court, instead of pronouncing upon such convict a definite or fixed term of imprisonment, shall pronounce upon such convict a sentence of imprisonment for an indefinite term: Stating in such sentence the minimum and maximum limits thereof; and the maximum limit shall never exceed the maximum time now or hereafter prescribed as a penalty for such offense; and the minimum limit shall never exceed one-half of the maximum sentence prescribed by any court:".

The appellants contend that the maximum sentence that could be imposed on Lang legally was a sentence of four to eight months. The maximum sentence in an indeterminate sentence is the real sentence. *Commonwealth ex rel. Monaghan v. Burke,* 169 Pa. Superior Ct. 256, 82 A. 2d 337. The lower court had the right under the statute to sentence appellant Lang up to eight months, and since this is the real sentence there is no reason why the judgment should be reversed. However, since The Penal Code makes the crime of abortion subject to imprisonment by separate or solitary confinement at labor, or fine, or both, the sentence should have

been an indeterminate one. Where the original sentence is illegal or erroneous we may remit the record to the lower court for proper sentence, and that court may proceed to sentence the defendant anew in proper form and according to law. *Commonwealth v. Downer,* 161 Pa. Superior Ct. 339, 53 A. 2d 897; *Commonwealth ex rel. Monaghan v. Burke,* supra.

The judgments of sentence of Charles Christopher Campbell and Thelma Adele Ensor are affirmed and they are ordered to appear in the court below at such time as they may be there called, and that they be by that court committed until they have complied with their sentences or any part thereof that had not been performed at the time the appeal was made a supersedeas.

The judgment of sentence of Charles William Lang is affirmed and it is directed that the record be remanded to the Court of Oyer and Terminer of York County for correction of the sentence to include a minimum and the defendant, Charles William Lang, is ordered to appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part thereof that had not been performed at the time the appeal was made a supersedeas.