Commonwealth ex rel. O'Neill v. Banmiller

*Harry Siegel,* for relator.

*John F. Hassett,* Assistant District Attorney, for respondent.

SLOANE, P. J., May 16, 1962.—This is a petition for writ of habeas corpus, which after hearing, was denied and dismissed.

Over 11 years ago, on September 18 and 19, 1950, Paul D. O'Neill, this petitioner and relator, appeared before President Judge MacNeille and a jury. He had been indicted for robbery (bill no. 1399) ; committing crimes of violence while armed, aggravated robbery (bills no. 1400 to 1412) ; larceny of an automobile and receiving stolen goods (bills no. 1435 to 1441) ; carrying a concealed deadly weapon without a license (bill no. 1451) ; and assault with intent to kill (bill no. 1452).

O'Neill was not tried on five of these indictments; the court on its own motion with approval of the district attorney sustained demurrers as to eight of them; the jury found him not guilty on one indictment and guilty on nine others. He received a suspended sentence on indictment no. 1402, three and one half to seven years on no. 1408, and four to eight years on each of indictments nos. 1400, 1401, 1403, 1404, 1406, 1409 and 1410. The sentences were to run consecutively for a total of 31½ to 63 years.

O'Neill was tried without representation of counsel which he now claims deprived him of due process. He also contends that two of the indictments which were imposed (bill no. 1402, suspended sentence, and bill no. 1404, four to eight years) are null and void because the victims never appeared at his trial.

The record breathes the care Judge MacNeille gave O'Neill. The record affirmatively shows that every effort was afforded him to secure the assistance of counsel. He was asked by the trial judge if he had endeavored to engage counsel and he stated, "yes." O'Neill stated he had written his family and friends for funds to secure counsel but that these pleas went unanswered. The case had been listed for trial four times covering a three month period; continuances had been granted because relator had no attorney.

Joseph Alessandroni, Esq., then of the Public Defender's Office, advised the court of his attempts to represent O'Neill but was advised that O'Neill refused to be defended by a public defender. He wanted private counsel. O'Neill's refusal was based on the fact that the public defender advised him to enter a guilty plea. Mr. Alessandroni denied this.

The court requested Mr. Berkowitz, a member of the bar, to represent O'Neill. Mr. Berkowitz advised O'Neill to plead guilty, which he refused to do and it was then that Mr. Berkowitz said he could not adequately represent O'Neill. O'Neill stated to the court, "I want to stand trial."

The court took every precaution to safeguard O'Neill's rights in that Mr. Alessandroni was asked to see to it that O'Neill's rights were protected and to call any errors to the court's attention. O'Neill adamantly refused any assistance from Mr. Alessandroni.

An entire new panel of jurors was selected. This eliminated those of the panel who had heard the discussion referred to above; they were replaced in order to protect O'Neill's rights.

O'Neill questions the validity of the court's jurisdiction on indictments no. 1402 and 1404. On these two indictments, the victims did not appear and did

not testify against O'Neill. Under the circumstances of the case, it was not necessary that the victims of these robberies testify since the proof of these crimes was established by other eye-witnesses: Commonwealth v. Campbell, 196 Pa. Superior Ct. 380.

After O'Neill's petition was filed with the court, an appearance was entered by counsel who filed a brief containing other arguments. Counsel contends that in spite of all efforts by the court to protect O'Neill's interest, it was not done. He points to indictment no. 1408, where the court stated there is "no identification," and to which the district attorney replied, "I have left them out." The victim of the robbery charged in indictment no. 1408 was one Ada Parkersurst who made an unqualified identification of O'Neill. The submission to the jury and the subsequent conviction were proper.

Counsel further argues that O'Neill was not asked by the court if he had any objections to the charge or if there were any points for charge. The court did ask, "Is there anything you want to call my attention to?" In view of O'Neill's consistent refusal to interrogate witnesses, there is nothing to indicate a desire to respond to the court's query.

Finally, it is contended that the sentence of the court was a severe one, imposed because of information given to the court by the district attorney which was improper and violated all rules of evidence. Although the cumulative effect of the sentence is 31½ to 63 years, the sentences are within the maximum prescribed by law. We should not review the severity of the sentence if the sentence is valid: Commonwealth ex rel. Dempsey v. Martin, 181 Pa. Superior Ct. 274, cert. denied 352 U. S. 933 (1956). Counsel's contentions are directed to the severity of the sentence and not to whether or not the original sentence was a nullity.

The district attorney did state, after the verdict, that there were a number of other robberies "which he wasn't on trial for, and some out of the jurisdiction which the police have information on." The record shows that in fact O'Neill was under indictment and was not tried for certain robberies (nos. 1399, 1407 and 1412), and further, that the authorities of the State of New Jersey had a detainer lodged against him for robbery.

Although one might question the propriety of the district attorney's comment that, "He has gotten around some of those prison lawyers down there who have been trying to put some things in his head," it was not prejudicial.

A confession of O'Neill was not introduced into evidence at the suggestion of the court. O'Neill has not asserted, let alone demonstrated, how he could be prejudiced by this.

It is argued that O'Neill was prejudiced by the following remark of the court: "Because you are such a notorious liar that I knew you would take the stand and lie and say you have been beaten up and this is how you made the confession because this is a new jury and there are women on the jury and a young fellow can sometimes get their sympathy, and I knew it would be a dangerous thing." At the time of the court's comment as to O'Neill's veracity, the court had ample opportunity to assess his ability to tell the truth and had heard the testimony relating to the great number of crimes in which he participated.

Counsel contends that it was improper for the district attorney to advise the court that O'Neill's accomplice, Toy, had pleaded guilty and had implicated O'Neill. This could not have influenced the verdict unfavorably; the verdict had already been recorded.

Finally, it is argued that the district attorney by implication tried to connect O'Neill with murders that

Toy was to be tried on, and that the court accepted this theory. This is explicitly refuted by the district attorney's statement that O'Neill "is lucky he wasn't with Toy on that night."