UNITED STATES of America ex rel.
Charles C. CAMPBELL

v.

A. J. RUNDLE, Superintendent, State
Correctional Institution,
and
Daniel W. Shoemaker, District Attorney
of York County, Pennsylvania.

No. M–2504.

United States District Court
E. D. Pennsylvania.

April 16, 1963.

Vinikoor, Fein, Criden & Johanson, by Martin Vinikoor and Stanford Shmukler, Philadelphia, Pa., for relator.

Daniel W. Shoemaker, Dist. Atty. of York County, York, Pa., for respondents.

WOOD, District Judge.

The Relator was convicted of the crime of abortion in York County, Pennsylvania on October 25, 1958. He was sentenced on May 15, 1961 to a term of one and a half to five years imprisonment in the State Correctional Institution at Philadelphia, Pennsylvania.

Subsequently, the judgment was affirmed by the Superior Court of Pennsylvania on November 16, 1961, reported in Commonwealth v. Campbell, 196 Pa. Super. 380, 175 A.2d 324; rehearing was denied on December 11, 1961.

The Supreme Court of Pennsylvania denied allocatur on February 13, 1962, and on November 13, 1962 the United States Supreme Court denied a Writ of Certiorari; rehearing denied January 7, 1963, 371 U.S. 959, 83 S.Ct. 498, 9 L.Ed.2d 507.

On March 13, 1963 this Court granted a Rule to Show Cause why a Writ of Habeas Corpus should not issue and the Relator was admitted to bail pending the final disposition of this Rule. A hearing was had before the Court on April 3, 1963.

## DISCUSSION

Basically, the Relator contends that he was deprived of due process when his rented farmhouse was subjected to a search based on the authority of a warrant allegedly issued without probable cause for the crime of abortion. Relator also requested the Court to review the whole record because he believes the State's failure to produce the victims of the abortions deprived him of due process.

These constitutional issues were considered by the State courts and were framed in the Petition for Certiorari denied by the United States Supreme Court.

The search warrant in question was issued by Alderman Fickes of York County upon information received from Corporal (now Sergeant) Robert Smith of the Pennsylvania State Police. Sergeant Smith testified that he had been on the case investigating the Relator's activities for four years previous to the issuance of the search warrant. He had knowledge of the Relator's criminal record which included a prior conviction for abortion.

The series of events leading up to the issuance of the allegedly tainted warrant was set in motion when the owner of the farmhouse, leased to the Relator, filed a general complaint with Corporal Miller of the State Police. It seems that the owner, Colonel Hinkley, had become suspicious of the nighttime activities of the Relator in using the farmhouse. He had no specific knowledge of any abortions being performed on his property. Corporal Miller referred this complaint to Sergeant Smith who was investigating the Relator. In the course of his investigation Sergeant Smith contacted a Mrs. Smith (no relation) who resided approximately 1000 feet from the Relator's farmhouse. She had become suspicious of the comings and goings of automobiles to the farmhouse at night. She stated to the officer that no one was ever there in the daytime. Also, on one occasion she picked up her telephone which was on a party line with the Relator and she overheard a conversation concerning a girl who was supposed to have a baby and when were they going to bring her down.

Sergeant Smith went to see the real estate agent who negotiated the lease of the premises to the Relator. The agent identified the Relator as the lessee of the farmhouse from a picture exhibited to him by Sergeant Smith but stated that the Relator had used an assumed name. He further identified the picture of a female co-defendant who represented to the agent that she was the Relator's wife. She likewise used an assumed name.

On November 21, 1962 Sergeant Smith went to Alderman Fickes and made his complaint for the issuance of a search warrant. He related the facts of his investigation to the Alderman and obtained the warrant. The language of the warrant states that it was issued on information received from officer Smith and that there is just cause to suspect that articles and instruments to procure abortions are possessed in the farmhouse. Armed with this warrant Sergeant Smith and eleven other policemen surrounded the farmhouse at 6 p. m. on the evening of November 21, 1958. After a period of observation during which two vehicles arrived at the farmhouse and discharged their female passengers, three officers entered the farmhouse at 7:40 p. m. via the front door with a key obtained from Colonel Hinkley.

No announcement of their purpose was made by the policemen until they gained entry, whereupon Sergeant Smith found the Relator dressed in a white cap, coat, trousers and wearing a surgeon's mask. The contents of the warrant were read to the Relator and he was placed under arrest. The search of the premises revealed the presence of five females and various surgical implements among other things.

A return of the warrant together with a list of the fruits of the search typed on its reverse side was filed with the Alderman who had issued the process. The Alderman could not recall the exact date of the return but stated that it was made within the required ten day period.

Probable cause has been defined by the Supreme Court in Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879, as follows:

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved."

This definition was expressly followed by the Supreme Court in Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1958), where the Court stated:

" * * * Probable cause exists where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162 [45 S.Ct. 280, 69 L.Ed. 543]."

■■ In the instant case the Relator has not carried his burden of convincing this Court that Sergeant Smith did not relate sufficient facts to give the Alderman probable cause for the issuance of this warrant. The fact that much of Sergeant Smith's information was hearsay does not militate against the reasonable, probable inferences deducible from these facts. It is now unquestioned that probable cause can be bottomed on hearsay, so long as the information is reasonably corroborated by other matters within the officer's knowledge. Jones v. United States, 362 U.S. 257, 269, 80 S. Ct. 725, 4 L.Ed.2d 697 (1960). In Jones, Mr. Justice Frankfurter stated at page 270 of 362 U.S. at page 735 of 80 S.Ct. as follows:

" * * * There is a large difference between the two things to be proved [guilt and probable cause] * * * and therefore a like difference in the *quanta* and modes of proof required to establish them."

We conclude, therefore, that Sergeant Smith's own knowledge coupled with the information received in the course of his investigation was sufficient to cause a reasonable man to believe probable cause existed for the issuance of the search warrant.

Relator further contends that the unannounced entry of the police vitiates the subsequent search and makes any evidence obtained illegally seized. For this proposition he cites Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), where *Federal* and local police officers broke the doors of the petitioner's apartment without a warrant to arrest him for violating *Federal* law. The Court stated that the lawfulness of an arrest by *state* peace officers without a warrant for a violation of *Federal* law is determined by reference to *state* law. But the Government and the petitioner contended since this was an arrest on probable cause the validity of the arrest must be tested by the criteria contained in 18 U.S.C.A. § 3109 which deals with entry to execute a search warrant. This section requires an officer to announce his authority and purpose before entry. The Court found that since the local law of the District

of Columbia was similar to the Federal law that the requirement of notice in 18 U.S.C.A. § 3109 applied.

■■ There is no Pennsylvania law or decision which renders a search illegal because *State* officers fail to announce their authority and purpose before they enter a premises to execute a search warrant dealing with a *State* crime. The Superior Court of Pennsylvania, in the instant matter, specifically considered the *facts* incident to the manner of execution of this warrant.[1] Nothing contained in their opinion indicates that the Superior Court regarded this unannounced entry as a contravention of Pennsylvania law. Also, the officers having observed two females enter the farmhouse had probable cause, along with their other knowledge, to believe that a crime of serious bodily harm was being committed when they entered. Their entry was peaceable, justified and incident to a valid arrest. Marron v. United States, 275 U.S. 192, 198, 48 S.Ct. 74, 72 L.Ed. 231 (1927); and Martin v. United States, 4 Cir., 183 F.2d 436 (1950).

■■ Relator's other contention that he was denied due process by the State's failure to produce the abortion victims at the trial is without merit and it is not supported by the overwhelming evidence of guilt contained in the record. United States ex rel. Helwig v. Maroney, 271 F.2d 329 (3 Cir. 1959). It is apparent in this regard that Relator is questioning the sufficiency of the evidence to sustain his conviction which is not the purpose of the Great Writ. Clarke v. Huff, 73 App.D.C. 351, 119 F.2d 204 (C.A.D.C.1941).

### ORDER

And now, this 16th day of April, 1963, it is ordered that the Petition for a Writ of Habeas Corpus is denied, and the Relator's bail is hereby revoked; and he is ordered to be returned to the custody of A. J. Rundle, Superintendent of the State Correctional Institution at Philadelphia, Pennsylvania.

1. 196 Pa.Super. 380, 383, 175 A.2d 324 (1961).